Ye ates J.
I have no doubt, that an individual, who maliciously, wantonly, and without probable cause, asperses the character of a public officer in a written or printed paper, delivered to those who are invested with the power of removing him from office, is responsible to the party injured in damages, although such paper is masked under the specious cover of investigating the conduct of such officer for the general good. Public policy demands no such sacrifice of the rights of persons in an official capacity, nor will the law endure such mockery of its justice.
But hard as such a case confessedly is, the streams of jus *26 tice must flow in their accustomed channels. The rules of evidence, founded in good sense, and the experience of mankind, must be adhered to. The law abhors parol evidence of the contents of written instruments, and considers it as highly dangerous. The principle is relaxed only on the ground of necessity, of which I know but of three instances ; where the instrument is satisfactorily proved to have been destroyed, or lost, so that it could not be found on a careful search, and due diligence used; or traced to the possession of the adversary, who refuses to produce it, on proper notice given' and due diligence used. Here it is admitted, that the libellous paper, which is the foundation of one of the counts in the declaration, exists on the files of the chief magistrate, although it has not been in the power of the defendant in error to produce it on the trial. He run this risk when he brought his suit without having the paper in his possession; and however I may privately feel in this particular case, I am constrained to declare, that improper evidence has been received on the trial, and therefore the judgment below must be reversed, and a new trial awarded.
Brackenridge J.
The present is alleged, on the part of the defendant, to be the case of a deposition taken in the course of a quasi judicial proceeding. Admitting this, can a writing as made, and called a deposition, be a libel and actionable? Of this I can have no doubt, if the words written, are without reasonable ground, or probable cause. For, both these terms, are used in the books. The plaintiff has shewn enough when he has proved the writing as laid in his declaration. This will support his action, if the words are libellous, without going farther. It will lie upon the defendant to shew that the writing was published in a judicial, or quasi judicial proceeding, as it is termed in the books; but he must go farther, and give proof of the truth of the words; or, if he cannot do this, show reasonable ground, or probable cause for their truth.
The plaintiff, may, if he chooses, either, in the fix-st instance, with a view to aggravate damages, go on to shew express malice ; or, after an attempt by the defendant, to shew probable cause, he may rebut this by proof of express malice. If this was a quasi judicial proceeding, as the defendant alleges, it must stand on the saxne ground as that of a judicial *27 proceeding, that is, a writing made and published in a course of justice. But, if, with a view to a' prosecution of the. plaintiff, and the convicting him of a crime'or misdemeanor, it is a malicious prosecution, if, without reasonable ground, or probable cause. The case before us partakes of the nature of a prosecution ; and is not barely a libel, independent of a prosecution before the proper authority. It is in the nature of a malicious prosecution; and the same law applies, if groundless and vexatious.
The defendant says, I am privileged, because the writing was made and published, in a course of justice. I was seeking justice from the competent authority. I admit that you are privileged, says the plaintiff, to a certain extent; that is, to the same extent, as in the case of a judicial proceeding, with a view to the conviction of a misdemeanor or crime. That is to the extent, that you are not bound to prove the truth of the words; but you are bound to shew reasonable ground, or probable cause, of your taking them to be true.
There is a want of precision of language, oftentimes, even with those who may have precision of thought, that misleads the student of the law; as, in the opinion of the court in this case, where they say, “ if the prosecution turned out to be “ malicious, and destitute of reasonable, or probable cause ;’ and again, “ originating in malice, and destitute of all reason“able,or probable cause.” To have expressed themselves with precision, the language ought to have been, “ where the prosecution turned out to be malicious, being destitute of rea- “ sonable, or probable cause.” And again, “ originating, in. “ malice, being destitute of reasonable, or probable cause which last is their meaning, though inaccurately expressed. For when malice is proved, reasonable or probable cause will not justify. Or want of reasonable or probable cause constitutes an implication of malice, which makes a libel, and express malice goes in aggravation of the damages.
The idea that a person libelled, or maliciously prosecuted, must prove the quo animo, or express malice, is, of all things, the most absurd. For, what is it to any one libelled or prosecuted, what the motive is ? It may be from an attachment to what is conceived to be the public good; he may think, he is doing “ God’s serviceor at least his country’s service. It is his act, not his motive, with which the law has to do j at least so far as respects the right of action. The badness pf *28 the. motive goes in aggravation of damages. The shewing a mistaken good intention goes only in mitigation; it does not justify* It goes to this extent only, that the error of the judgment, or, in other words, the weakness of the head, may relieve, in some degree, the malice of the heart; that is, may account for it without supposing great depravation of the moral character. Though a notion of honour, or, in other words, pride, may be wounded by being thought weak, yet the law distinguishes, and excuses less the being xvicked. It must depend on the circumstances of the case, and may be a question of fact to the jury, or of law to the court, if left to them on demurrer, what shall constitute a reasonable ground ox probable cause.
As to the Governor, in this case, being compellable to give the deposition or writing transmitted to him, I incline to think it cannot be done. It must be a matter within his discretion, to furnish or to refuse it; and this on ground of public policy. Nevertheless, though not in the power of the party to procure the deposition, parol evidence of its contents cannot be given. In the case of a malicious prosecution, the court may refuse a copy of the record; and yet parol evidence .of the record, because they did refuse it, could not be given. Public policy would seem tó be in the way of admitting parol evidence, as well as of producing the original writing; for that would come to the same thing as to the policy. It would be a check on representations to the competent authority. It would restrain the free communications that might be necessary for the public good in case of a candidate for office, or of one who was alleged unworthy to retain an office, to lay it down, that a Governor, or the competent authority for appointing and removing, should be compellable to produce papers for the purpose of supporting an action in a a court of law. Be this as it may, it will well deserve to be the subject .of legislative provision, both as to the policy of compelling the Governor under a subpoena duces tecum, to come with the paper; or to enable a person to prove a copy taken from the records, as they may be called in some measure, of papers transmitted to him in his official capacity. I feel my indignation in this case, as much, or more, excited against the justice of the peace who took this inofficial depositionj He is as much liable to an action as the defendant. But of this he does not seem to be aware. He has got his *29 ¿hilling for it, or whatever it may be, and thinks himself safe. I take it for granted that the deposition was a libel, malicious “ and groundless; the defendant not consenting to the giving a copy of the original in evidence; nor to parol proof of the contents.
The foregoing opinions were delivered at September Term, 1814. The Chief Justice took further time to consider: in consequence of which the counsel on each side furnished arguments in writing, which the reporters regret are too long to insert.
At this Term the following opinions were given.
Tilghman C. J.
On the trial of this cause, an exception was taken to the charge of the Court, and also to the admission of parol evidence, to prove the contents of the writing which was the cause of action. It is an action for a libel made and published by Gray, the defendant, against Pent-land, the plaintiff, who is the prothonotary of the Court of Common Pleas of Allegheny county. The defendants made a deposition before a justice of the peace, charging the plaintiff with several offences in the transaction of his official business, and concluding with an allegation, that “ from frequent intoxication he was unfit to perform the duties of his office “ with dignity and propriety.” This deposition was sent by the defendant to the Governor, and his counsel requested the Court to charge the jury, “ that if it was made and sent for “ the purpose of an investigation of the plaintiff’s official con- “ duct, and his fitness for office, it was not actionable.” The Court would not go to the extent required, but gave in charge, “ that if the deposition originated in malice, and was desti- “ tute of probable cause, the action was maintainable.” The defendant contends, that as the Governor has the power of removal from office for misbehaviour, the accusation exhibited against the plaintiff, is in the nature of a judicial proceeding, and therefore not actionable. It is a general rule, that all allegations made in the ordinary course of judicial proceedings are not to be considered as libels. For this there are tWQ reasons. One, that it would be impolitic to discourage the free prosecution of wrongs, public or private: the other, that the proceedings ending in a public trial, the injured party has *30 an opportunity of vindicating his character. Yet Serjeant Hawkins is of opinion, that if one should institute a judicial proceeding out of pure malice, and with intent, not to carry it through, but to expose the character of his neighbour, under shew of law, it would be indictable as a libel. 1 Hawk. book I. ch. 73. sect. 8. This opinion is founded on strong reason, because the perverting of legal process from its true use, to the gratification of malice, is a fraud in law. The deposition, however, of which the plaintiff complains, was not a judicial proceeding. The Governor might act upon it as he thought good. He might either disregard it altogether, or give it such credit as to remove the plaintiff from office without further inquiry. And even if he determined to investigate the matter, he could hold no court, nor compel witnesses to appear before him: so that the plaintiff would not have that security or protection which is assured to him in judicial proceedings. I am aware of the danger of discouraging accusations of this kind. If officers misbehave, it is proper that their conduct should be made known to him, who has the power of removing them; especially if the misbehavour be of a kind not cognisable in the courts of justice, as is the case with many breaches of morals and decency. But although officers should be amenable to every species of fair inquiry, I see no policy in placing them in the situation of outlaws, in exposing them naked to the shafts of malice and calumny. In order then to protect both the public and the officer, I consider accusations preferred to the Governor, so far of the nature of judicial proceedings, that the accuser is not held to prove the truth of them. Any thing which satisfies the jury, that the proceeding did not originate in malice, and without probable cause, is sufficient to excuse him. The law was so laid down by this Court, in Birch v. M'Millan, where the words for which the plaintiff brought his action, were spoken by the defendant, in the usual course of proceedings, in the religious society of which both were 'members. And the law is the same with regard to counsel, who are highly privileged in pleading the cause of their client. If they wantonly depart from the evidence and point in issue, with an intent to injure the character of the adversary, without propriety or probable ground, they are responsible. Nor are even witnesses entitled to any higher protection. They are to speak the truth with freedom, but not to gratify malice under cover of law. *31 1 shall not enter into a detail of cases; but these are the principles established by the best authorities : and they are ' principles which while they sufficiently protect the public interest, can give uneasiness to none but dishonest persons. I am, therefore, of opinion, that there is no error in the charge of the Court.
The second point is on the admission of parol evidence, to prove the contents of the defendant’s deposition. The general rule is, that where the original is in existence, it must be produced, because in its nature it is better evidence than a copy. But to this, as to all other rules, there are exceptions. Where it is proved, that the original is destroyed, or lost beyond reasonable hope of finding, a copy, or parol evidence of the contents, is received; because the law requires not impossibilities. Another exception is, where the original is in the hands of the adverse party, who refuses, after notice, to produce it: because the non-production affords "a strong presumption, that if produced it would make against'him: and also, because it is impossible for one party to produce^ a paper which is in the hands of gnother. The same principle will admit parol evidence, where the original has been in the hands of the adverse party, who has given it to a third person, with a view of secreting it, or where it has been in the hands of a third person, who in collusion with the adverse party, or with a view of screening him, has put it out of the way. For the general rule, and these exceptions, I refer to Bull. N. P. 293, 294. 2 Esp. Ni. Pri. 782. (2d edit.) Peak. Evid. 96, 97. (Philad. edit.) 3 Mass. Rep. 82. The Commonwealth v. Snell. But the bare circumstance of the party’s not having it in his power to produce a paper, is not sufficient reason for admitting parol evidence; for at that rate all deeds or writings belonging to third persons might be proved by parol. It will always be a question, whether, with proper exertions, he might not have had it in his power: and sometimes it will be a question, whether, if the paper be in existence, and not lost, its production be not indispensable. When a paper is in the hands of a third person, who is not willing to part with it, the Court will sometimes compel its production by a subpama duces tecum. But this is not to be obtained without special permission, and the Court always exercises its discretion in granting or refusing it; I recollect no instance where parol evidence has been admitted, merely be *32 cause a subpoena duces tecum was refused. The paper in 'question in this case is in existence, but not in the possession or power of the defendant; nor does it appear to have been withheld by his means or at his instance. There is no natural impossibility in the production of it by the plaintiff. But it has been strenuously contended, that there is a moral impossibility, and therefore the case falls within the spirit of the exception. It appears, to me, that another principle, a principle,of policy, is tó be taken into consideration, in deciding this question. We must inquire, whether, in analagous cases, it has not been judged proper to insist on the strict rule- which calls for the original paper. It is matter of very delicate concern to compel the chief magistrate of the state to produce a paper which may have been addressed to him, in confidence, that it should be kept secret. Many will be deterred from giving to the Governor that information which is necessary, if they are to do it at the hazard of an action, and of all the consequences flowing from the enmity of the accused. It would seem reasonable, therefore, that the Governor, who best knows the circumstances under which the charge has been exhibited to him, and can best judge of the motives of the accuser, should exercise his own judgment with respect to the propriety of producing the writing. . It is not to be presumed, that he would protect a wanton and malicious libeller. And even if he should, it is better that a few of the guilty should escape, than a precedent be established, by which many innocent persons may be involved in trouble. These seem to have been the sentiments of the Court of Common Pleas who refused a subpoena duces tecum. Now if the law will not enforce the production of the paper from motives of policy, will it be right to counteract that policy, by the admission of parol evidence ? In deciding on this point we are not without precedent. There is an analagous case in which the law is settled. In an action for the malicious prosecution of an indictment for felony in England\ production of the record or a certified copy is insisted on, although it be out of the power of the plaintiff to produce either one or the other: for the Court which has the custody of the record will not permit a copy to be given, without special license, which is always refused, when in the Court’s opinion there was probable cause for the prosecution. The case of the plaintiff is harder in that case than in the present: an? *33 indictment for felony being much more injurious to character and fortune, than a charge of drunkenness or misbehaviour in office. On full consideration, assisted by the lahorious researches of the counsel on both sides, for which they merit the thanks of the Court, I am of opinion, that the parol evidence ought not to have been admitted. The judgment must, therefore, be reversed, and a venire de novo awarded.
Ye ates J.
I have paid every attention in my power to the ingenious remarks made by the counsel on both sides since the former argument; and can see no reason for retracting the opinion which I then formed.
I never can be brought to believe, that the constitution or laws.of this commonwealth intended to place its public officers out of their pale and protection. “ Every citizen may “ freely speak, write, and print, on any subject: being re- “ sponsible for the abuse of that liberty.” Wherever, under the insidious mask of consulting the public welfare, he renders the investigation of the conduct of a public officer the mere vehicle of private malevolence, and a jury on the-trial shall be fully satisfied that the publication was wanton and malicious, and without probable cause, he has no pretensions to escape unpunished.
Here the copy of the libellous publication was admitted in evidence to the jury, although the original remained in the office of the Secretary of the Commonwealth at Harrisburg. The books are filled with cases shewing, that the copy of a deed or private paper is not evidence, unless it be in the hands of the opposite party, destroyed, or lost. Among many others take the following: Gilb. Law Evid. 96. 10 Co. 92. b. 2 Keb. 546. 1 Mod. 4. 266. 10 Mod. 8. Bull. N. P. 254. 294. Hardw. Cas. 304. 1 Burr. 353. 4 Burr. 2488. 2 Bac. Ab. 307, 308. Espin. Dig. 782. 2 Vern. 471. 591. 2 Atk. 72.
But the counsel of the defendant in error, have urged, that he has done every thing in his power to entitle him to go into this secondary species of evidence ; and that such efforts bring him within the principle established in the cases of Aickles v. Le Merchand, and Colonel Gordon, decided since the American Revolution, and reported in Leach's Crown Cases, 272. (1st edit.) The grounds of the reasons given therein, “ that the original was not in the power of the party, *34 “and no subpcena issued:” and, that “the court would not make the cases stronger against the defendant in an indictment an in a civil case,” seem to be, not that the original was not in the power of the party, but was either in the actual or constructive possession of the other; which was either positively proved or established on violent presumption; and being so in his possession, notice either in form or effect was always required to be given, before the other secondary evidence could be received, Christian, in his notes on 3 Black. Com. 368. judiciously remarks, that no rule of law is more generally cited, and more frequently misconceived than this; that where the best evidence the nature of the case will admit of cannot possibly be had, the best evidence that can be had shall be allowed. It signifies nothing more than that if the best legal evidence cannot possibly be produced, the next best legal evidence shall be admitted. Secondary evidence is as accurately defined by the law as primary evidence. Where there are exceptions to general rules, these exceptions are as much recognised by the law as the general rule, &c.
I admit, that this case, under all its circumstances, bears hard on the defendant in error: but a hardship of a like nature exists, where a defendant, acquitted on a charge of felony, has been denied the copy of the record of his indictment and acquittal, without which he could not support an action of malicious prosecution. 3 Bl. Com. 126. Be the hardships of this case what they may, I deem it more eligible, that a private inconvenience should be submitted to, rather than introduce a public mischief. Favourable cases make bad precedents. I consider the necessity of producing existing written original instruments as of the utmost importance to the peace and safety of society upon trials, and that the present case forms an exception to the general rules of evidence. I am, therefore, of opinion, that the judgment below be reversed, and a new trial awarded.
Brackenridge J. declared his concurrence, and referred to his opinion delivered last September.
Judgment reversed, and a venire facias de novo awarded.