## Yoter *against* Sanno.

The delivering up of a paid prize-ticket in a lottery subsequently suppressed, raises a presumption of loss sufficient to let in proof of contents; and though it is usually the business of a jury to deal with presumptions of mere fact, yet as preliminary evidence in chief, they are ground of adjudication by the court.

ERROR to the common pleas of *Cumberland* county.

Action of *assumpsit.* John Yoter against Michael Sanno.

This action was brought by the plaintiff upon an alleged agreement between him and the defendant, by which they, being each the owners of a ticket in the Union Canal Lottery, agreed to share with each other whatever might be drawn by either. Yoter's ticket drew a prize of 1 dollar and 25 cents—and Sanno's a prize of 5000 dollars. Sanno received the money which his ticket drew, and denied that any such contract or agreement was made between them. And this action was brought to recover one half the proceeds.

The plaintiff offered N. Ulerich as a witness, to testify in relation to the ticket of Sanno which drew the prize.

The defendant objected to the evidence until the ticket be produced or its loss accounted for.

The plaintiff then gave the following evidence to the court.

Nicholas Ulerich, sworn.—On a market morning Mr Yoter and Mr Sanno came to my house. Sanno purchased either a half or a quarter ticket in the Union Canal Lottery for his wife, and an eighth for himself, and Yoter said that he had purchased an eighth also, and said, suppose Sanno, you and I put our eighths together, and whatever they draw each shall have half. Sanno said he was agreed, and Yoter then said, well, do you take my ticket and put it in your pocket book with yours, and whatever they draw we will each have half. Sanno said, we need not do that, you can trust me, and I trust you, and whatever they draw we will divide; and they were thus agreed, and they took a drink for luck. This was the spring of 1833. This was the scheme exhibited to Mr Sheaffer after the drawing.

George W. Sheaffer, sworn.—Mr. Sanno brought the ticket to me after the drawing, and I took it to Philadelphia for him, and received the money for him at Yates & M'Intyre's office, in April 1833; it was an eighth, and I received 531 dollars and 25 cents, and paid it to Mr Sanno. Mr Watts called on me to know where I got the money, and I told him; after that, some time last summer, I went to the same place in Philadelphia, and the office was not then kept there, but I heard they had an office in Chesnut street,

[Yoter v. Sanno.]

and one of the partners lived in Camden; the other I think he said was dead.

F. Watts, Esq., sworn.—I went to Philadelphia, to the office to which Mr. Sheaffer directed me that he had taken the ticket, and inquired for Yates & M'Intyre, to whom he had delivered it, and from whom he had received the money; the office was not then kept there, but I was referred to another person, who had been a clerk in the office at the time; I found him in Chesnut street; he said that he had no such paper as the ticket, that either Yates or M'Intyre was dead, and the survivor lived in New York. I inquired if it was likely the survivor would know any thing about the ticket; he informed me, that they were in the habit, in the office, occasionally, of burning papers to prevent so great an incumbrance, and he had no doubt from that circumstance, this ticket had been destroyed. I inquired if any inquiry of the survivor would be likely to 'be of use; he said, he presumed he would know nothing about it. The clerk referred to, also stated that he thought that the survivor had only taken documents of some value in their business with him.

The court below was of opinion that the loss of the ticket was not sufficiently accounted for, and rejected the evidence.

*Watts*, for plaintiff in error.
*Penrose* and *Alexander*, for defendant in error.

The opinion of the Court was delivered by

Gibson, C. J.—There are presumptions of mere fact, which are of growing importance in the application of evidence, and which temper the severity of its rules as abstractions, by adapting them more intimately to convenience and justice in practice. Standing towards the circumstances from which they spring, in the relation of cause and effect, they are founded, not in artificial connections, but in the current of human affairs; nor have they a technical force beyond their natural power of creating belief. They are conclusions from experience, that the same consequences usually proceed from the same causes, which dispense with proof of circumstances that usually attend particular actions. Such is the presumption of guilt from the possession of goods recently stolen; of illegitimacy from recency of birth after the husband's first access; and of many other facts inferred from the conduct of the parties, of which other examples are given in 2 *Stark. Ev.* (*Gerhard's ed.*) 684. Though it is usually the business of the jury to deal with these presumptions of mere fact, they furnish a ground of adjudication by the court, when they are preliminary to evidence in chief. What, then, is the presumptive fate of a prize-ticket after it has been presented and paid, and when the lottery has been suppressed? Undoubtedly destruction. Being of no greater value to any one connected with the office, than a bit of waste paper,

[Yoter v. Sanno.]

there would be no motive to preserve it. In fact, it would be the interest of the managers to destroy it, in order to prevent it from getting into hands that might put them to proof of having paid it. In this instance the office was discontinued, and the managers were either dead, or had gone from the state. To have preserved a mass of tickets, such as must have been accumulated in many years, would have been not only useless, but burthensome; and the presumption of their destruction or loss, is as violent as it would be in the case of a tattered bank note traced home, immediately before a new emission of a different stamp. Who will say that parol evidence of a bank note even in actual circulation, might not be given on proof that it could not be followed to the hands of a particular holder? Having no clue to it, it would be effectively a lost note to the party desirous of using it; and it would be very like a denial of justice, to preclude him from showing its contents by the best evidence in his power. Why does the law tolerate secondary evidence of a paper withheld? Simply, because it is all that the party can be expected to give; and the fact of inability deduced from the nature of the circumstances, is sufficient for the exigence, without regard to the paper's existence. So far as this principle is involved, the decision in Gray *v.* Pentland, 2 *Serg. & Rawle* 23, rests upon peculiar, if not questionable grounds. It seems to have been thought, that secondary evidence of contents, may not be given when the paper is in existence, though inaccessible, except in two specific cases—when it is lost, or where it is in the hands of the opposite party. The rule, however, is broad enough for every case which affords not a presumption that better might be had; and the authorities cited on the occasion show it to be so. But the chief justice ultimately put the cause on its true foundation. The case, he said, was one of those in which the law is restrained by public policy from enforcing the production of papers, and consequently from doing the same thing in effect, by receiving proof of their contents. Be that as it may, there was a presumption of loss, in this case, which, while unrebutted, made ample way for evidence of contents.

Judgment reversed, and a *venire de novo* awarded.