(*Recorder's Court of Chicago.*)

## The People

### vs.

### Edward Rummel.

(February 15, 1870.)

1. CONTEMPT—FAILURE TO OBEY SUBPOENA DUCES TECUM—MATERIALITY OF EVIDENCE. In an application for attachment for failure to comply with an order to produce papers it is proper for the court to look into the nature of the evidence proposed, to see whether or not if produced they would be admissible in evidence; this can be usually determined on a rule to show cause.
2. SUBPOENA DUCES TECUM—WHEN INSUFFICIENT. "Papers which were presented to the governor" is too indefinite a phrase upon which to base an action for refusing to obey a subpoena *duces tecum.*
3. CRIMINAL LIBEL—PRIVILEGED COMMUNICATION—PETITION FOR REPRIEVE. A petition to the governor for a reprieve is a proceeding "in the regular course of justice" and as such is privileged if the matter contained therein is pertinent, and the governor cannot be compelled to produce the petition in order that an indictment for libel may be based thereon. Such a communica-

tion is also privileged because it is a confidential communication sent to the governor of a state in the course of a duty he is called upon to perform as an officer, and is inadmissible to form the basis of an indictment unless there is a showing that there was libelous matter maliciously inserted and not pertinent to the petition.

Motion to attach the secretary of state for contempt.

McALLISTER, J.:—

This is an application made by the state's attorney for an attachment against Edward Rummel, secretary of state, for non-compliance with a *subpoena duces tecum*. The chief and pertinent facts are simply these: that a few days ago a complaint was made before the grand jury of this court, against divers citizens of Chicago for an alleged libel consisting of matter contained in a petition signed by these parties and presented to the governor, asking for the commutation of the sentence of Daniel Walsh, who was under sentence of death; that there was contained in that petition a statement that the person whom Daniel Walsh murdered was his wife, and that she had been unfaithful to her marital relations, and in a fit of frenzy, arising from that condition of affairs, he took her life. The subpoena was issued upon the 11th day of January, 1870, was served on the secretary on the 12th day of February, and he declined to appear and produce the document mentioned in the subpoena.

It is not material in this application, as I view the subject, whether he put his refusal upon the proper ground or not. He declined to produce the paper himself, or to send it by a messenger.

The first question which occurred to my mind was, whether in this application for an attachment it was proper for the court to look into the nature and character of the evidence proposed, and to determine whether, if the paper was produced, it would be admissible in evidence, it being very clear to my mind that if the paper itself would not be admissible in evidence for any good reason, it would be arbitrary and oppressive to issue an attachment to compel the secretary

or governor of the state to come from Springfield here for the purpose of performing a useless act.

The proper practice generally would be, in such a case, to obtain an order to show cause why an attachment should not issue, and then all the facts proper to be considered could be presented; but as the character of the paper, and uses which were made thereof, appear upon the face of the subpœna itself, it is quite as well to decide it on what appears there, as to make the order to show cause, and require the secretary of state to come here and make the same appearance. The order is, "We command you to summon Edward Rummel to bring with him the petition and papers which were presented to the governor of the state of Illinois for the commutation of the sentence of Daniel Walsh."

It is also a general rule that a *subpœna duces tecum* should definitely define the papers which the party or witness is commanded to produce. So far as it relates to the petition itself, it may be sufficiently defined, but the expression, "and papers which were presented," is too indefinite to base any action on whatever.

Now, as to the first point, whether the court has a right to examine into the nature of the evidence proposed, to determine whether it would be admissible on an application for an attachment, I have a case directly in point, the case of *Rex v. Samuel Dixon,* 3 Burrows, 1687.

"A subpœna out of the Crown Office had been served upon Mr. Samuel Dixon, an attorney, with a *duces tecum* of certain papers hereafter mentioned, to give evidence before the grand jury of the county of Northampton, at the last assizes there, and to produce three vouchers which had been produced and insisted upon by one Mr. Peach, Mr. Dixon's client, before a Master in Chancery; and this subpœna, with the *duces tecum,* was in order to found a prosecution by way of indictment against Peach (who had produced these vouchers before the Master), for forgery. Mr. Dixon did not appear before the grand jury, in obedience to this subpœna, whereupon, on Monday, the 6th inst., Mr. Wallace moved, on behalf of the prosecutor, for an attachment against him for refusing to ap-

pear, and had a rule to show cause. Mr. Caldecott now shewed cause. He insisted that Mr. Dixon could give no other evidence but of what had been communicated to him by his client in confidence, and therefore he was not compellable to produce these papers against his client, in order to prove him guilty of a forgery. Lord Mansfield was clearly of this opinion, and that Mr. Dixon, instead of producing them against his client, ought to have, immediately upon receiving the subpœna, delivered them up to his client. Mr. Justice Wilmot concurred that he ought not to have produced them against his client. Mr. Justice Yates was of the same opinion, and thought the rule ought to be discharged with costs. Rule discharged with costs.''

This case is quoted by Lord Ellenboro, with approbation, in the case of *Haley v. Long* (9 East.), and has never been attacked or shaken as an authority on that question. The principle of it is, that, upon an application for an attachment against a witness for not obeying a *subpoena duces tecum,* it is proper for the court to look at the nature and character of the document proposed to be introduced as evidence, and determine whether or not it is admissible.

The next point to be determined on this application is whether the petition signed by the parties against whom the complaint is made, and caused to be presented by them or other persons to the governor, upon an application made to him to commute the sentence, is one that can be extorted from the possession of the governor or secretary of state, and introduced in evidence as the foundation of an indictment for libel. If this document, under the circumstances, is what would be called a privileged proceeding and communcation, then it is not admissible in evidence.

There is a variety of cases upon this subject, under the various heads of applications made to the grand jury, applications made to government officers, to commissioners— from all of which the rule may be deduced that, when the proceeding is one authorized by law, it is privileged, and whatever is said in any paper connected with that proceeding, which is pertinent to the proceeding itself, is privileged,

and cannot be the basis for an action or indictment for libel. The rule is as properly stated as in any case in the case of *Gilbert v. The People,* 1 Denio, 43. The court there says:

"Whatever may be said or written by a party to a judicial proceeding, or by his attorney, solicitor, or counsel therein, if pertinent and material to the matter in controversy, is privileged, and, consequently, lays no foundation for a private action or a public prosecution. The general language of elementary writers is, that whatever occurs in the regular course of justice is privileged, and by which they intend to indicate the principle I have stated."

Now, this is not, directly, a judicial proceeding; but it is a proceeding in the "regular course of justice."

The constitution of the state of Illinois contains this section (Constitution 1848, article IV, sec. 8):

"The governor shall have power to grant reprieves, commutations, and pardons, after conviction, for all offenses except treason and cases of impeachment, on such conditions and with such restrictions and limitations as he may think proper, subject to such regulations as may be provided by law relative to the manner of applying for pardons."

There is no manner provided by law relative to the manner of applying to the governor. The common mode in all the states of this union, unless provision is made by law, is to make application by petition, and, of the petition made to the governor to exercise the power thus given to him by the constitution, it may be said that it may be regarded as a regular proceeding in the absence of any provision of law for another and different proceeding, and it follows, as a matter of course, that anything stated in the petition for that purpose, that would be pertinent to the application itself, would be privileged under the rules now established by the courts of the country. The leading case in the state of New York is the case of *Thorn v. Blanchard,* 5 Johns. 508. That was where divers inhabitants of a county presented a petition to the council of appointment, stating that B., district attorney, was actuated by improper motives in his official conduct and praying that he might be removed from office, which petition

was read by the council, who removed B. from office. It was held that an action would not lie against A. at the suit of B., though the words be false and actionable in themselves. All the authorities, so far as they relate to civil actions, are reviewed in this case.

It might be said that there could be no protection given to those who circulated the petition. It will be apparent to any one that if the power is given to present a petition properly drawn, it being a necessary incident to the right that it should be circulated for the purpose of being signed, that it would come within the privilege precisely as much as presenting the petition to the governor. I refer to the case of *Vanderzee v. McGregor*, 12 Wendell, 545. This was:

A memorial presented to a board of excise, remonstrating against the granting of a license to a particular individual to keep a tavern, charging him with stirring up justices' suits, with a view of having the causes tried at his tavern, and the court decided that ''no action lies as for the publication of a libel unless express malice be proved.'' The court say, ''Perhaps the presenting the petition to different individuals for their signature might be considered a publication of the libel, and not covered by the privilege; but I am inclined to think that if the nature of the communication is such as to be privileged, when presented to the tribunal for which it was originally designed that it cannot be a libelous publication of it to present it to others for their signature. The nature of the transaction requires that the memorial should be circulated to obtain signatures; and, unless express malice is shown, the conclusion of law, within the principle above adverted to is, that it was circulated with a *bona fide* intent of obtaining signatures, and not to propagate slanderous charges against the party.''

If it be maintained that this is not a privileged communication, then it follows, as a matter of course, that the right of petitioning the governor to pardon, or commute, under certain circumstances, is entirely taken away. The indictment, if one were found in this case, would be for a writing whose tendency was to ''blacken the memory of the dead,''

and the statute which defines libel in that manner also provides that the truth may be given in justification in all cases, except where the indictment is for a libel tending to "blacken the memory of the dead or to expose the natural defects of the living." So that under an indictment for this class of libel, it would not be advisable to give the truth in evidence.

Let us use an illustration for the purpose of testing the position as taken by those who claim that this is not a privileged communication. Suppose, for instance, that Mr. Samuel Hale should wake up in the night thinking that he heard some person in his house. He should seize his gun or pistol, and in going to the door should see a man emerging from his door, running away from his house. He shoots at him, the shot takes effect and kills the person. If complaint is made against him as his case would stand under the law of the land, he would be guilty of murder; that killing would not be in self-defense, or in defense of his property or any of his family, but he killed the man when he was retreating, after he had committed the offense, and it would be as much murder as if he shot him next day, or went into the jail, after his capture, and shot him there. Supposing he is proceeded against and convicted, it would be murder; there would be no defense; there must be a perversion of law or perjury by the jury to acquit him, and the jury must fix his punishment at imprisonment for life. The citizens are aroused; they think the sentence unjust, and wish to apply to the governor for a pardon. It would not be sufficient to allege in the petition that Mr. Hale was always a respectable citizen. Dr. Webster was a respectable citizen; John C. Colt was a respectable citizen. It would be necessary to show to the governor the circumstances under which the shooting took place. They proceed to write down that the deceased was a burglar; he had already committed a burglary; was notorious, perhaps, and had been convicted for burglary; the deceased was in his house, and under the excitement of the time and the occasion, he used firearms upon him and killed him, under circumstances which the law would not justify. The moment you write down the word "burglar" in that petition you are

guilty of a libel; you blacken the memory of the dead, and every man who signs that petition is guilty of a crime before the law, and, when he is indicted, he can't prove that that man was a burglar in fact, because the statute forbids it. The law is not guilty of any such absurdity. When it is properly understood it harmonizes in all its particulars. This statute was not intended to apply to any such case.

Carrying the illustration a little further, suppose some of our enterprising newspaper men should send down to Springfield and obtain a copy of the petition and publish it in their newspaper. They have published a libel. They are indicted. What will they say? Can they give the truth in evidence? No! What would be their defense? Certainly, if every man who signed this petition aided in forwarding it to the governor for the purpose of having him act upon it under the constitutional power vested in him were guilty of libel by that act itself, then they were guilty of libel when they published it. Their only defense would be that this was a paper used in the "regular course of justice," and they had a right to publish it for that reason. Upon no other ground could they defend themselves against an indictment for libel.

There is another position that may be taken in this case, that the rule of privilege extends to all confidential communications sent to the president of the United States, or to the governor of a state, in the course of the performance of any duty that he may perform as an officer, and was so decided on the Burr trial by Chief Justice Marshall. I have a case here, the case of *Gray v. Pentland*, 2 Serg. & R. 23:

"A subpœna had issued from the court below and had been served, directed to the governor and secretary of the commonwealth, with a *duces tecum* for the deposition." That was a deposition which was alleged to have amounted to a libel, "and a rule was entered for the purpose of taking their depositions in Harrisburg. But they declined appearing, either under the rule or the subpœna. They also declined delivering to the plaintiff the deposition made by the defendant."

Breckenridge, J., giving the opinion of the court, says: "As to the governor, in this case, being compelled to give

the deposition or writing transmitted to him, I am inclined to think it cannot be done. It must be a matter within his discretion to furnish or refuse it, and this on the ground of public policy."

This case was cited and approved by the supreme court of Pennsylvania by Chief Justice Gibson, in the case of *Youten v. Sanno*, 6 Watts, 166.

It is not pretended that the secretary of state knows any fact connected with this matter, independent of his being the mere legal custodian of that paper under the duties of his office. It may be necessary, in the case, to summon the governor as a witness, to show who presented it and what was said, and I hold, and it is a position that cannot be successfully overthrown, that the communication itself is a privileged communication, and the document is not admissible in evidence, as the foundation of an indictment, unless it shows that matter was thrown into the petition which was not pertinent to the application, and with the malicious design of merely blackening the memory of the dead. As this is an application for an attachment without obtaining an order to show cause, and there is no affidavit to anything in the case to show to the court that there is any such feature to this paper, it is my duty to presume, in the absence of such evidence, that there is no such feature to it and to deny this application.