STATE OF MISSOURI, ex rel. SAMUEL J. DOUGLAS, Relator, v. LEWIS T. TUNE, MERRELL P. WALBRIDGE, MAURICE J. CASSIDY and EDWARD C. MARSH, Respondents.

St. Louis Court of Appeals. Argued and Submitted March 20, 1918. Opinion Filed May 7, 1918.

1. **EVIDENCE: Confidential Communications to Public Officers: Privileged: Public Policy: Mandamus.** Under article 14, section 2, of the charter of the city of St. Louis, establishing a complaint board and authorizing such board to receive complaints against any department, board, division, officer, or employee of the city, and recommended to the proper city or state authorities any action deemed advisable, *held* that communications by citizens to the complaint board, covering the conduct of public officers and employees, are to

State ex rel. v. Tune et al.

be considered as highly confidential, and as records to which public policy would forbid the confidence to be violated. [ALLEN, J., dissenting.]

2. ——: ——: ——: Not Subject to Inspect and Copy nor Production: Mandamus. Such complaint board were justified in their refusal to permit an inspection of a letter, which was made the basis of a libel suit against the sender, and in refusing to allow a copy to be made of it, and neither the appellate court, nor the circuit court in which the action for libel is pending, can compel the production of the letter for the purposes sought. [ALLEN, J., dissenting.]

MANDAMUS. ORIGINAL PROCEEDING.

ALTERNATIVE WRIT QUASHED, AND PERMANENT WRIT DENIED.

*Douglas W. Robert* for relator.

(1) The Complaint Board has no right to refuse the relator the right to inspect and copy the letter. It contained false charges against him. It is against public policy to make this Board a repository for libelonus letters. (2) (a) The question of privilege is for the defendants in the libel suit, not for the Board of Complaint. (b) In any event such letter is but conditionally privileged. Finley v. Steele, 159 Mo. 305; Newell Lib. and Slan. (2 Ed.), 475; 1 Cooley Torts (3 Ed.), 434. (3) (a) Production of papers under order of court does not constitute an unreasonable search or seizure. In re Dunn, 9 Mo. App. 225. (b) Even if this is a search or seizure, it is not unreasonable, as all the requirements of the Constitution have been complied with. Article 2, section 11. (c) Public records are always open to inspection by parties having an interest Burton v. Tinte, 78, Mich. 363; Boylan v. Warren, 39 Kan. 301; Brewer v. Watson, 61 Ala. 310; State v. Elsworth, 61 Neb. 444; State v. Williams, 110 Tenn. 549. (4) The relator has no adequate remedy at law. Remmers v. Remmers, 217 Mo. 561.

*Charles H. Daues* and *Everett Paul Griffin* for respondent.

(1) The letter as described in relator's petition, charging relator with misconduct and with offences against the city ordinances and the State laws, is on the grounds of public policy, a privileged communication for the information of the Complaint Board, and cannot be furnished to outsiders unless it is deemed advisable by the Board and the persons writing the letter consent thereto. Furthermore, as the letter charges offenses against the city and State laws, and as it is the duty of the Complaint Board, after investigating a letter of the character described herein, to make recommendations to the city of State authorities, the Complaint Board has no authority to disclose the names of people giving it this information, nor to disclose the channels through which the information was obtained. Gray v. Pentland, 2 Serg. & Rawle (Penna.) 23; Yotur v. Sanno, 6 Watts Rep. 164, 166; Worthington v. Scribner, 109 Mass. 487; Rex v. Hardy, 24 Howell's St. Tr. 808-815; Boske v. Comingore, 177 U. S. 459; 4 Jones' Commentaries on Evidence, sec. 762; 4 Jones' Commentaries on Evidence, sec. 762, p. 480. (2) Even where a positive law requires public records to be kept and to be open to the inspection of the public, such records, if privileged, cannot be used in a trial between outside litigants, nor can they be examined or copies of them made, to be used as evidence in litigation. This has been held in the case of hospital records in Missouri and records of the Insane Asylum in Michigan. Smart v. Kansas City, 208 Mo. 162; Massachusetts Mutual Life Ins. Co. et al. v. Board of Trustees of the Michigan Asylum for the Insane, 144 N. W. 538. (3) This is not a proper case for mandamus because the Complaint Board acts in a quasi-judicial capacity. There is no law, charter provision, ordinance or otherwise, requiring the Complaint Board to allow the public generally, or any person outside the Complaint Board, to inspect a letter complaining about

a city employee, or to allow such person to make a copy of the same. The Complaint Board is not charged with that legal duty. Mandamus will lie only where it is the clear legal duty of a person to perform a particular act. Even then mandamus is a discretionary writ. Ex parte Roland, 104 U. S. 604, 612, 617; State ex inf. v. Kansas City Gas Company, 254 Mo. 515, 531; State ex rel. v. St. Louis, 251 Mo. 274, 276; State ex rel. v. Appling, 191 Mo. App. 589, 592; State ex rel. v. Drury, 182 Mo. App. 100; State ex rel. v. Bank, 174 Mo. App. 589, 593. (4) This proceeding is an effort to determine questions by mandamus which should be determined on appeal or writ of error, and the effect of the court's decision, if against respondents, would be to determine the competency of evidence to be introduced on the trial of the libel suit in the Circuit Court. If the relator's position is correct and this alleged letter is competent evidence, he may obtain the same by a subpoena duces tecum in the circuit court on the trial of the case. His remedy in the circuit court, therefore, is adequate for his purposes. (5) The alleged letter, being a confidential communication to the Complaint Board, is not a public record, such as the record of a deed, but of a private and confidential nature, and to compel the respondents to produce said letter would be to violate the terms of the Constitution securing the people in their persons, papers, homes and effects from unreasonable searches and seizures. State ex rel. v. Trimble, 163 S. W. 860; Constitution of Missouri, sec. 11, art. 2.

REYNOLDS, P. J.—It is set out in the petition for a writ of mandamus now before us, that by section 2, of article 14, of the Charter of the city of St. Louis, a Complaint Board, consisting of three members, was created, with power in that board to employ a secretary. Setting out the section, it is averred that the respondents Tune, Wallbridge and Cassidy, are such board, and the respondent Marsh, its secretary, and that relator is an employee of the city of St. Louis in

its streets and sewers department, and that one Lawence McDaniel and one George E. Thomas, on November 29, 1916, wrote a certain letter, addressed to the Complaint Board, and filed the same with that board, and that thereby that letter became a public document and part of the records of the city of St. Louis. Averring that the relator could not set forth accurately the language of the letter, relator sets out what he avers is the substance of it. It is further averred that the relator, on December 29, 1916, filed in the circuit court of the city of St. Louis, his action for libel against McDaniel and Thomas, in which he charged that the letter was written by them and that by reason of the writing of the letter, the Complaint Board, or some one acting for it, or under it, or pursuant to its direction, caused a police officer to arrest the plaintiff and he was taken to the City Dispensary by a police officer and thence to the City Hospital, in the city of St. Louis, where he was confined for a period of three days, to his damage, as he says, in the sum of $50,000. It is further averred that in that action it was necessary for the relator, as plaintiff therein, to accurately set forth the language used in the letter, which he contends is libelous; that through his attorney he called upon the defendants, as members of the Complaint Board, and demanded that he be permitted to inspect and make a copy of the letter; that the Complaint Board, not only by its several officers, but also acting at a meeting thereof, refused to permit the relator to make or have a copy of the letter; that thereupon the relator, plaintiff in the above-mentioned action against McDaniel and Thomas, gave due notice of his intention to take depositions, and applied to the division of the circuit court of the city of St. Louis, in which the cause was pending, for a subpoena *duces tecum,* commanding said Marsh, as secretary of the board, to appear at the taking of these depositions and bring with him the letter referred to; that Marsh duly appeared before the commissioner theretofore appointed to take depositions in the case but refused to produce the letter; that

thereupon the commissioner duly reported to the court
the refusal of the witness and asked that he be held in
contempt until the letter was produced; that Marsh, by
his attorney, acting under the direction of the Com-
plaint Board, filed a motion to quash the subpoena on
the ground that the circuit court had no authority to
issue the same, which motion the circuit court sus-
tained, as it is said in the petition, ''on the authority
of State ex rel. McCulloch v. Taylor, 187 S. W. 1181,''
(268 Mo. 312). Averring that a copy of the letter is
necessary for the relator in the preparation of his ac-
tion against McDaniel and Thomas, and will be neces-
sary evidence at the trial of the case, and that there is
liability that the letter may be lost between this time
and the time the cause is set for trial, and that in that
letter, the relator, an employee of the city of St. Louis,
is charged with certain offenses, and for that reason
is entitled to have an inspection and copy of the letter,
and that the letter is a part of the public records of the
city of St. Louis and for that reason the relator is
entitled to have an inspection and make a copy, and
that without a copy of the letter and the letter itself at the
proper time, relator cannot prepare or try his action
against McDaniel and Thomas, and that the relator is
remediless in the premises by or through ordinary pro-
cess or proceedings, he prays our court to award its
writ of mandamus against respondents Tune, Wal-
bridge, Cassidy and Marsh, commanding them to permit
him, his agent, or attorney, to inspect or make a
copy of the letter.

On presentation of this petition, an alternative writ
of mandamus was issued.

Respondents, in their return, after admitting the
allegations as to proceedings in the circuit court to
obtain the production or inspection of the letter re-
ferred to, and averring that the Complaint Board was
created by the terms and provisions of the Charter of
the city of St. Louis in the interests of the city of St.
Louis and for the betterment and improvement of the

public service in the various departments of the government of the city of St. Louis, and that it would be against public policy and against the public interests for the Complaint Board, or its members, to disclose the contents of a letter or letters of the character described in the relator's petition, or to disclose the name or names of the writer or writers thereof, because such disclosure would deter people from making complaints which might be beneficial to the public interests and the public service, set up with great particularity why they should not be required to permit relator or others to inspect or make copies of complaints filed with them, and denying the power of the court to make the order, or grant the relief asked; also claiming that if relator is entitled to any order for the production of any letter, his remedy is in the circuit court.

On this return being filed, relator moved for judgment and the cause has been duly submitted and argued.

This is the second time that this same case has been presented to us and writ prayed for as now. Considering it involved a matter beyond our jurisdiction, that is, construction of the Constitution of the State, and was ancillary to a suit for $50,000, which amount also placed the cause beyond our jurisdiction, we transferred it to the Supreme Court. See under this same title, 191 S. W. 1078, a decision not to be officially reported. It seems that counsel for relator, to avoid delay, dismissed that case in the Supreme Court and there commenced an original proceeding on the like petition. The Supreme Court issued its alternative writ, to which respondents made return, and on the cause being presented, the court vacated the alternative writ and dismissed the cause, holding that there was nothing disclosed by the record why the proceeding should not be brought in our court, saying of our court, in an opinion filed but not yet officially reported:

"That court has, under section 12, of article 6, of the Constitution, the same authority to issue writs of mandamus that this court has under section 3 of the same article, without otherwise limited by other pro-

visions of the Constitution. That there is no such limitation in this case there can be no question for the reason that neither the subject-matter of the libel suit mentioned, nor the amount involved therein is involved in this case. This is a collateral proceeding to that action, merely involving the right of the relator to compel the Board of Complaint to produce the letter mentioned for his inspection and use as evidence in said libel suit.''

Relator thereupon instituted the present proceeding in our court, we issuing an alternative writ of mandamus.

Article 14, of the present charter of the city of St. Louis, adopted by vote of the people June 30, 1914, is headed, ''Public Welfare Boards.'' Under the first section provision is made for the administration of the Mullanphy Fund. The second section is as follows:

''Sec. 2. There is hereby established a complaint board to consist of three members to serve without compensation. Said members shall be appointed by the mayor for terms of one, two and three years, respectively. Each year thereafter the mayor shall appoint one member for a term of three years. Members shall hold office until their successors qualify. Said board shall employ a secretary, and may appoint such other employees as may be provided by ordinance. It shall receive complaints against any department, board, division, officer, or employee of the city, or against any public utility corporation, and examine the same. It shall recommend to the proper city or state authorities any action deemed advisable.''

The third section makes provision for other boards and institutions. The respondents are the members and secretary of the complaint board.

Assuming that the board has in its possession a letter such as described in the petition and alternative writ, and said to be described in the petition in the action in which the relator here is plaintiff and Lawrence McDaniel and George E. Thomas are defendants, lodging some sort of complaint against relator as a

city employee, the sole question for our consideration is, whether in this proceeding, we can compel the respondents to permit the relator or his attorney to examine and make a copy of that letter.

Our conclusion is that he is not entitled to any such order.

The learned counsel for the relator suggests that the question here involved is a matter of privilege which cannot be set up by the respondents; that such a defense belongs solely to the defendants in the libel suit and that the libel action is not now being tried. Concede this: The very gist of the case, however, is whether these respondents, the complaint board and its secretary, officers of the city of St. Louis, can be compelled to furnish a copy of a letter said to have been lodged with them, making charges against a city employee. It is they, as public officers, who claim the privilege, and properly so. As we understand the provisions of section 2, of article 14, of the charter of the city of St. Louis, the Complaint Board was established for the very purpose of promoting efficiency in the public service. That board is authorized to receive complaints against any department, board, officer, or employee, of the city and examine into the same. It has no power to take any action of itself. All that its power, after investigation and inquiry, consists of, is, to recommend to the proper city or State authorities any action deemed advisable as to city employees and officers or public service corporations. They serve without compensation. In the very highest sense, they are the confidential servants of the city and of its officers, for the purpose of advising those officers as to the character, fitness, ability and suitability of the various employees of the city, as well as of the acts of public utility corporations. We can conceive of no higher, more important, and useful branch of public administration than the duties thrown upon this Complaint Board. It is almost a necessary implication, when we consider the creation and objects and scope of this board, that communications from citizens, complaints

from citizens, are the main source for putting the powers of inquiry of the board into play. Surely this provision of the charter does not contemplate that the members of the board, who are serving without compensation, are to go around, of their own initiation, and investigate into and inquire as to all of the several officers and employees of the city, consisting of thousands of individuals. They must rely almost entirely upon information voluntarily given to them by citizens, who may have knowledge of the conduct and character and fitness of city employees. The creation of the board, in itself and in a measure, invites complaints from citizens of their officers and of public employees. If every citizen who knows of the unfitness of an officer or employee, or of facts he thinks require an investigation, believes it his duty to lodge information before the board, he will hesitate a long while before doing so if he knows his complaint is to be made public and become of the public records, so that any one may have access to it and be subjected to action for a possible libel. It is not to be expected, if that is so, that very many will come forward and lodge a complaint. We think that if it was understood that the complaints lodged by citizens against these employees were to become public property, without the consent of the party filing them, that the very object for which this board is created would be defeated. It may be that in sealing the records, so far as relates to these complaints, from public inspection, some individual will be hurt, but the right of that individual must yield to the right and to the benefit of the public at large. In our opinion these communications by citizens to the Complaint Board, covering the conduct of public officers and employees, are to be considered as highly confidential, and as records to which public policy would forbid the confidence to be violated. Such is said to be the law where the question has been very fully considered in a recent work on evidence, namely, Jones' Commentaries on the Law of Evidence in Civil Cases, vol. IV, sec. 762, p. 576, to which, without re-

peating or reproducing, we refer. There the case of Boske v. Comingore, 177 U. S. 459, is referred to and quoted at length as sustaining the confidential character of such communications.

In Gray v. Pentland, 2 Serg. & Rawle 23, the Supreme Court of Pennsylyania held that accusations preferred to the Governor of the State against a person in office are, so far of the nature of judicial proceedings, that the accuser is not held to prove the truth of them; that it is excused if they did not originate in malice and without probable cause, and that parol evidence cannot be given of the contents of a libelous deposition sent to the Governor containing charges against an officer of his appointment in an action for libel, though the court has refused a *subpoena duces tecum,* and that the Governor, to whom such a deposition is addressed must exercise his own judgment with respect to the propriety of the production of the writing. This same principle was subsequently recognized as sound by the Supreme Court of Pennsylvania in Yoter v. Sanno, 6 Watts 164, l. c. 166.

In Worthington v. Scribner, 109 Mass. 487, Judge GRAY, afterwards Mr. Justice GRAY of the Supreme Court of the United States, held (l. c. 488):

"It is the duty of every citizen to communicate to his government any information he has of the commission of an offense against its laws. To encourage him in performing this duty without fear of consequences, the law holds such information to be among the secrets of State, and leaves the question how far and under what circumstances the names of the informers and the channel of communication shall be suffered to be known, to the absolute discretion of the government, to be exercised according to its views of what the interests of the public require. Courts of justice therefore will not compel or allow the discovery of such information, either by the subordinate officer to whom it is given, by the informer himself, or by any other person, without the permission of the government. The evidence is excluded, not for the protection of the

witness or of the party in the particular case, but upon general grounds of public policy, because of the confidential nature of such communications."

While we have no decision of our courts that directly meets this proposition, we have its spirit applied in Smart v. Kansas City, 208 Mo. 162, 105 S. W. 709. There it was held that a hospital physician who attends a patient at the hospital not only cannot testify as to what he learned of the patient's condition while so attending her, but that the official hospital record, into which has been copied the diagnosis of the case, is privileged and not admissible in evidence. It is further there held that the fact that the city ordinances require such records to be kept furnish any reason why the statute against disclosure of privileged communications should be violated. That opinion is not altogether germane to the case before us but is illustrative of the rule as to privileged communications. In line with this decision of our Supreme Court is that of Massachusetts Mutual Life Ins. Co. v. Board of Trustees of Michigan Asylum for the Insane, 178 Mich. 193, 144 N. W. 538.

Our conclusion is that the respondents here were justified in their refusal to permit relator to have an inspection of the letter, assuming such letter was in their control, and in refusing to allow the relator to make a copy of it. That is as far as we go in this case, except to say that neither our court nor the circuit court in which the action for libel is pending, can compel the production of the letter for the purposes sought by relator. Whether the circuit court, in which the action for libel is pending, can proceed with the case, in the absence of the original letter and allow parol testimony to be given as to its contents, is a question which is not now before us and which we do not decide. The alternative writ heretofore issued is quashed and a permanent writ denied. *Becker, J.,* concurs. *Allen J.,* dissents.