THE STATE ex rel. SAMUEL J. DOUGLAS v. GEORGE D. REYNOLDS et al., Judges of St. Louis Court of Appeals.

#### In Banc, February 15, 1919.

1. **LIBEL: Letter to City Government: Qualified Privilege.** A letter addressed to the Board of Complaint, a governmental agency of the city, concerning a city employee, is qualifiedly privileged, and in the absence of an allegation that it was maliciously written is to be considered as presumably written in good faith and without malice.

2. **MANDAMUS: Production of Evidence: Privileged Communication: For Use in Libel Suit.** The Supreme Court has never ruled that a court by mandamus may compel the production of a letter, not alleged to be maliciously written and therefore a privileged communication, addressed to a governmental agency established for the purpose of promoting the efficiency of the public service and authorized to receive complaints against any department, officer or employee of the city and after investigation to recommend any action deemed advisable, and which caused relator to be discharged and to be arrested, in order that its contents may be made known and used as a basis of a pending libel suit against the writers; and, hence, the opinion of the Court of Appeals holding that the members of the said Board of Complaint cannot be compelled to produce such letter for said purpose cannot be quashed on *certiorari*.

3. **CERTIORARI: Conflict in Opinions.** Unless there is a conflict in the opinion of the Court of Appeals and some previous decision of the Supreme Court, the opinion of the Court of Appeals cannot be quashed on *certiorari*.

#### Certiorari.

WRIT QUASHED.

*Douglas W. Robert* for relator.

The opinion of the Court of Appeals holds that all communications to the Board of Complaint are privileged and that no court can compel the production of them or compel the board to allow inspection, even if

said letters were written maliciously and without probable cause, and this conflicts with the opinion of this court in the case of Finley v. Steele, 159 Mo. 299. Peak v. Taubman, 251 Mo. 418; Holmes v. Royal Union, 225 Mo. 568; Minter v. Bradstreet, 174 Mo. 487; Wagner v. Scott, 164 Mo. 301; Smith v. Fidelity Co.. 190 Mo. App. 457; Overton v. White, 117 Mo. App. 604; Yager v. Bruce, 116 Mo. App. 483.

*Charles H. Daues* and *Everett P. Griffin* for respondent.

(1) In a proceeding by *certiorari* to review an opinion of the St. Louis Court of Appeals, the Supreme Court follows these rules: First, The Supreme Court will consider one question and one question only, and that is whether or not the decision of the Court of Appeals is in conflict with the latest previous rulings of the Supreme Court on the same question. Second, There must be a conflict between the decision of the Court of Appeals and the latest previous rulings of the Supreme Court. If there is no decision of the Supreme Court on the question decided by the St. Louis Court of Appeals, then there can be no conflict, and even the fact that the Court of Appeals may have decided the case wrongly will not be considered by the Supreme Court. Third, The Supreme Court will not go outside of the opinion of the Court of Appeals to ascertain what the facts are and will only consider the points raised in the petition for the writ of *certiorari*. Fourth, The Supreme Court will give weight to the fact that the Judge of the Court of Appeals who dissented in a particular case did not certify the case to the Supreme Court, showing that he did not think there was any conflict between the opinion of the Court of Appeals and any decisions of the Supreme Court. State ex rel. v. Farrington, 272 Mo. 157; State ex rel. v. Reynolds, 272 Mo. 588; State ex rel. v. Ellison, 199 S. W. 403; State ex rel. St. Regis v. Reynolds, 200 S. W. 1039; State ex rel. Shawhan v. Ellison, 200 S. W.

1042. (2) The opinion of the St. Louis Court of Appeals is not in conflict with the decision in the case of Finley v. Steele, 159 Mo. 299, and the other cases following that case cited in relator's brief, nor is it in conflict with any of the latest previous rulings of the Supreme Court. The opinion of the Court of Appeals was written on the theory set forth in the following cases: Gray v. Pentland, 2 Serg. & Rawle (Penn.), 23; Yoter v. Sanno, 6 Watts, 166; Worthington v. Scribner, 109 Mass. 487; Rex v. Hardy, 24 Howell's St. Tr. 808; Boske v. Comingore, 177 U. S. 459; 4 Jones' Commentaries on Evidence, sec. 762, p. 480; Smart v. Kansas City, 208 Mo. 162; Massachusetts Mutual Life Ins. Co. v. Board of Trustees of the Michigan Asylum for the Insane, 144 N. W. 538.

GRAVES, J.—*Certiorari* to the St. Louis Court of Appeals. The judgment sought to be quashed is one entered in an original proceeding in that court. Such judgment was in a mandamus proceeding, and the Court of Appeals has succinctly outlined the facts in an opinion filed, thus:

"It is set out in the petition for a writ of mandamus now before us, that by Section 2 of Article XIV of the Charter of the City of St. Louis, a Complaint Board, consisting of three members, was created, with power in that board to employ a secretary. Setting out the action, it is averred that the respondents Tune, Walbridge and Cassidy are such board, and the respondent Marsh, its secretary, and that relator is an employee of the City of St. Louis in its streets and sewers department, and that one Lawrence McDaniel and one George E. Thomas, on November 29, 1916, wrote a certain letter, addressed to the Complaint Board, and filed the same with that board, and that thereby that letter became a public document and part of the records of the City of St. Louis. Averring that the relator could not set forth accurately the language of the letter, relator sets out what he avers is the substance of it. It is further averred that the relator,

on December 29, 1916, filed in the circuit court of the City of St. Louis his action for libel against McDaniel and Thomas, in which he charged that the letter was written by them and that by reason of the writing of the letter, the Complaint Board, or some one acting for it, or under it, or pursuant to its direction, caused a police officer to arrest the plaintiff and he was taken to the City Dispensary by a police officer and thence to the City Hospital in the City of St. Louis, where he was confined for a period of three days, to his damage, as he says, in the sum of $50,000. It is further averred that in that action it was necessary, for the relator, as plaintiff therein, to accurately set forth the language used in the letter, which he contends is libelous; that through his attorney he called upon the defendants, as members of the Complaint Board, and demanded that he be permitted to inspect and make a copy of the letter; that the Complaint Board, not only by its several officers, but also acting at a meeting thereof, refused to permit the relator to make a copy of the letter; that thereupon the relator, plaintiff in the above mentioned action against McDaniel and Thomas, gave due notice of his intention to take depositions, and applied to the division of the circuit court of the City of St. Louis, in which the cause was pending, for a subpœna *duces tecum*, commanding said Marsh, as secretary of the board, to appear at the taking of these depositions and bring with him the letter referred to; that Marsh duly appeared before the commission theretofore appointed to take depositions in the case, but refused to produce the letter; that thereupon the commissioner duly reported to the court the refusal of the witness and asked that he be held in contempt until the letter was produced; that Marsh, by his attorney, acting under the direction of the Complaint Board, filed a motion to quash the subpoena on the ground that the circuit court had no authority to issue the same, which motion the circuit court sustained, as it is said in the petition, 'on the authority of State ex rel. McCulloch v. Taylor, 187 S. W. 1181, 268 Mo. 312.' Aver-

ring that a copy of the letter is necessary for the relator in the preparation of his action against McDaniel and Thomas, and will be necessary evidence at the trial of the case, and that there is liability that the letter may be lost between this time and the time the cause is set for trial, and that in that letter, the relator, an employee of the City of St. Louis, is charged with certain offenses, and for that reason is entitled to have an inspection and copy of the letter, and that the letter is a part of the public records of the City of St. Louis and for that reason the relator is entitled to have an inspection and make a copy, and that without a copy of the letter and the letter itself at the proper time, relator cannot prepare or try his action against McDaniel and Thomas, and that the petitioner is remediless in the premises by or through ordinary process or proceedings, he prays our court to award its writ of mandamus against respondents Tune, Walbridge, Cassidy and Marsh, commanding them to permit petitioner, his agent, or attorney, to inspect or make a copy of the letter.

"On presentation of this petition, an alternative writ of mandamus was issued.

"Respondents, in their return, after admitting the allegations as to proceedings in the circuit court to obtain the production or inspection of the letter referred to, and averring that the Complaint Board was created by the terms and provisions of the Charter of the City of St. Louis in the interests of the City of St. Louis and for the betterment and improvement of the public service in the various departments of the government of the city, and that it would be against public policy and against the public interests for the Complaint Board, or its members, to disclose the contents of a letter or letters of the character described in the relator's petition, or to disclose the name or names of the writer or writers thereof, because such disclosure would deter people from making complaints which might be beneficial to the public interests and the public service, set up with great particularity why they should

not be required to permit relator or others to inspect or make copies of complaints filed with them, and denying the power of the court to make the order, or grant the relief asked; also claiming that if relator is entitled to any order for the production of any letter, his remedy is in the circuit court.

"On this return being filed, relator moved for judgment and the cause has been duly submitted and argued.

"This is the second time that this same case has been presented to us and writ prayed for as now. Considering it involved a matter beyond our jurisdiction, that is, construction of the Constitution of the State, and was ancillary to a suit for $50,000, which amount also placed the cause beyond our jurisdiction, we transferred it to the Supreme Court. See under this same title, 191 S. W. 1078, a decision not to be officially reported. It seems that counsel for relator, to avoid delay, dismissed that case in the Supreme Court and there commenced an original proceeding on the like petition. The Supreme Court issued its alternative writ, to which respondent made return, and on' the cause being presented, the court vacated the alternative writ and dismissed the cause, holding that there was nothing disclosed by the record why the proceeding should not be brought in our court, saying of our court, in an opinion reported in 273 Mo. 255:

"'That the court has, under Section 12 of Article 6 of the Constitution, the same authority to issue writs of mandamus that this court has under Section 3 of the same article, unless otherwise limited by other provisions of the Constitution. That there is no such limitation in this case there can be no question, for the reason that neither the subject-matter of the libel suit mentioned, nor the amount involved therein is involved in this case. This is a collateral proceeding to that action, merely involving the right of the relator to compel the Board of Complaint to produce the letter mentioned for his inspection and use as evidence in said libel suit.'

"Relator thereupon instituted the present proceeding in our court, we issuing an alternative writ of mandamus."

The court of appeals quashed their alternative writ, and it is this judgment that is here for consideration. It is urged that this opinion of the St. Louis Court of Appeals conflicts with our opinion in Finley v. Steele, 159 Mo. 299. The facts are few and simple, and the issues are really matters of law.

I. To separate wheat from chaff, it should be noted that the relator herein (the plaintiff in an alleged libel suit) does not aver in his application for mandamus to the St. Louis Court of Appeals that the letter which he seeks to see, was maliciously written. So far as his petition for this mandamus is concerned, such letter was presumably written in the utmost good faith and without malice, because the law presumes right action rather than wrong action upon the part of the citizen. So far as the record before us, which we are allowed to consider, is concerned, there is no allegation stating that the letter was maliciously written. This may be material later upon the alleged question of such letter being beyond what is known as a qualified privileged communication. The fact should be borne in mind. The application for mandamus simply states that the relator herein has brought and has pending an action for libel, and that it is necessary to have a copy of this letter, to his mind, a public document. He alleges the character of the board to which the letter was addressed, but does not allege that the letter was sent out of malice. In other words, so far as the petition before us for review is concerned, we must presume, under the law, that the letter was sent in good faith and without malice.

*No Allegation of Malice.*

II. If we must say that the letter was sent without malice, in the absence of an averment in the application or petition for mandamus that it was maliciously sent,

we must hold that the letter was at least qualifiedly privileged, and the qualified privilege would hold good in the absence of an allegation of malice. The petition for mandamus shows the board to which it was addressed was at least a governmental agency provided for the good of the city government. Complaints made to such a body, at the very least, must be held to be qualifiedly privileged, and the qualified privilege cannot be destroyed without a charge of malice. To destroy the patent qualified privilege of this letter, absence of good faith, and presence of malice, should have been charged. No such charge is made and upon this theory alone the Court of Appeals reached a right result in refusing the writ.

*Qualified Privilege.*

In the law of libel qualified privileged communications are recognized. The ban of a qualified privilege cannot be raised except by a charge of malice, and the proof thereof. In that most estimable work, 17 R. C. L. p. 341, we have the doctrine clearly stated in this language.

"This general idea has been otherwise expressed as follows: A communication made in good faith on any subject-matter in which the person communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which, without this privilege, would be actionable, and although the duty is not a legal one, but only a moral or social duty of imperfect obligation. In the absence of malice an utterance may be qualifiedly privileged, even though it is not true, and notwithstanding the fact that it contains a charge of crime. But mere color of lawful occasion and pretense of justifiable end cannot shield from liability a person who publishes and circulates defamatory matter. Hence, a publication loses its character as privileged, and is actionable, on proof of actual malice, or, at least, such gross disregard of the rights of the person injured as is equivalent to malice in fact. In the case of a qualified privileged communication the occasion on which it was made rebuts the inference

prima-facie arising from a statement prejudicial to the character of the plaintiff, and puts the burden on him to prove that there was malice in fact, that the defendant was actuated by motives of personal spite or ill will, independent of the occasion on which the communication was made."

The relator in this mandamus proceeding alleges all the facts necessary to put this communication or letter within the rule above announced. He fails to allege malice, the only thing which will take the communication from under the ban of a qualified privilege. This failure renders the letter or a copy thereof a useless thing for relator, in the course of his trial.

The foregoing remarks are all matters within the law of libel. Whether these paragraphs are material to the issues here, is doubtful. They only tend to show that the Court of Appeals was at least right in the result.

III. The real question in this case is whether or not the opinion of the Court of Appeals conflicts with our rulings. It is urged that it conflicts with Finley v. Steele, 159 Mo. 299, and cases approving and following it.

The Court of Appeals did not discuss the libel rule of a qualified privilege, and for this reason we suggested, supra, that what we said in paragraphs one and two, supra, might not be relevant to the real issue in this *certioari* proceeding. The Court of Appeals, first quotes Section 2 of Article XIV of the New City Charter, thus:

"Article XIV, of the present Charter of the City of St. Louis, adopted by vote of the people June 30, 1914, is headed 'Public Welfare Board.' Under the first section provision is made for the administration of the Mulanphy Fund. The second section is as follows:

" 'Sec. 2. There is hereby established a Complaint Board to consist of three members to serve without

compensation. Said members shall be appointed by the mayor for terms of one, two and three years, respectively. Each year thereafter the mayor shall appoint one member for a term of three years. Members shall hold office until their successors qualify. Said board shall employ a secretary, and may appoint such other employees as may be provided by ordinance. It shall receive complaints against any department, board, division, officer or employee of the city, or against any public utility corporation, and examine the same. It shall recommend to the proper city or state authorities any action deemed advisable.'

"The third section makes provision for other boards and institutions. The respondents are the members and secretary of that board."

The said court then proceeds to discuss the character of this board and the purposes of the law-makers (the people in this case) in enacting the charter. No case from Missouri Supreme Court rules upon this matter. Upon the character of this board the court says:

"As we understand the provisions of Section 2 of Article XIV of the Charter of the City of St. Louis, the Complaint Board was established for the very purpose of promoting efficiency in the public service. That board is authorized to receive complaints against any department, board, officer, or employee of the city and examine into the same. It has no power to take any action of itself. All that its power, after investigation and inquiry, consists of, is to recommend to the proper city of state authorities any action deemed advisable as to city employees and officers or public service corporation. They serve without compensation. In the very highest sense, they are the confidential servants of the city and of its officers, for the purpose of advising those officers as to the character, fitness, ability and suitably of the various employees of the city, as well as of the acts of public utility corporations. We can conceive of no higher, more important, and useful branch of public administration than the duties thrown upon this Com-

plaint Board. It is almost a necessary implication, when we consider the creation and objects and scope of this board, that communications from citizens, complaints from citizens, are the main source for putting the powers of inquiry of the board into play. Surely this provision of the Charter does not contemplate that the members of the board, who are serving without compensation, are to go around, of their own initiation, and investigate into and inquire as to all of the several officers and employees of the city, consisting of thousands of individuals. They must rely almost entirely upon information voluntarily given to them by citizens, who may have knowledge of the conduct and character and fitness of city employees. The creation of the board, in itself and in a measure, invites complaints from citizens of their officers and of public employees. If every citizen who knows of the unfitness of an officer or employee, or of facts he thinks require an investigation, believes it his duty to lodge information before the board, he will hesitate a long while before doing so if he knows his complaint is to be made public and become part of the public records, so that any one may have access to it and be subjected to action for a possible libel. It is not to be expected, if that is so, that very many· will come forward and lodge a complaint. We think that if it was understood that the complaints lodged by citizens against these employees are to become public property, without the consent of the party filing it, the very object for which this board is created would be defeated. It may be that in sealing the records, so far as. relates to these complaints, from public inspection, some individual will be hurt, but the right of that individual must yield to the right and to the benefit of the public at large. In our opinion these communications by citizens to the Complaint Board, covering the conduct of public officers and employees, are to be considered as highly confidential, and as records to which public policy would forbid the confidence to be violated. Such is said to be the law where the question has been very fully considered in a recent work on

evidence, namely, Jones's Commentaries on the Law of Evidence in Civil Cases, vol. 6, sec. 762, p. 576, to which, without repeating or reproducing, we refer. There the case of Boske v. Comingore, 177 U. S. 459, is referred to and quoted at length as sustaining the confidential character of such communications.

"In Gray v. Pentland, 2 Serg. & Rawle, 23, the Supreme Court of Pennsylvania held that accusations preferred to the Governor of the State against a person in office are, so far of the nature of judicial proceedings, that the accuser is not held to prove the truth of them; that it is excused if they did not originate in malice and without probable cause, and that parol evidence cannot be given of the contents of a libelous deposition sent to the Governor containing charges against an officer of his appointment in an action for libel, though the court has refused a subpoena *duces tecum,* and that the Governor, to whom such a deposition is addressed, must exercise his own judgment with respect to the propriety of the production of the writing. This same principle was subsequently recognized as sound by the Supreme Court of Pennsylvania in Yoter v. Sanno, 6 Watts, 164, l. c. 166.

"In Worthington v. Scribner, 109 Mass. 487, Judge GRAY, afterwards Mr. Justice GRAY of the Supreme Court of the United States, held (l. c. 488): 'It is the duty of every citizen to communicate to his government any information he has of the commission of an offense against its laws. To encourage him in performing this duty without fear of consequences, the law holds such information to be among the secrets of State, and leaves the question how, for and under what circumstances the names of the informers and the channel of communication shall be suffered to be known, to the absolute discretion of the government, to be exercised according to its views of what the interests of the public require. Courts of justice therefore will not compel or allow the discovery of such information, either by the subordinate officer to whom it is given, by the informer himself, or by any other

person, without the permission of the government. The evidence is excluded, not for the protection of the witness or of the party in the particular case, but upon general grounds of public policy, because of the confidential nature of such communications.'

"While we have no decision of our court that directly meets this proposition, we have its spirit applied in Smart v. Kansas City, 208 Mo. 162, 105 S. W. 709. There it was held that a hospital physician who attends a patient at the hospital not only cannot testify as to what he learned of the patient's condition while so attending her, but that the official hospital record, into which has been copied the diagnosis of the case, is privileged and not admissible in evidence. It is further there held that the fact that the city ordinances require such records to be kept furnish no reason why the statute against disclosure of privileged communications should be violated. That opinion is not altogether germane to the cause before us, but is illustrative of the rule as to privileged communications. In line with this decision of our Supreme Court is that of Massachusetts Mutual Life Ins. Co. v. Board of Trustees of Michigan Asylum for the Insane, 178 Mich. 193, 144 N. W. 538.

"Our conclusion is that the respondents here were justified in their refusal to permit relator to have an inspection of the letter, assuming such letter was in their control, and in refusing to allow the relator to make a copy of it. That is as far as we go in this case, except to say that neither our court nor the circuit court in which the action for libel is pending, can compel the production of the letter for the purposes sought by relator. Whether the circuit court, in which the action for libel is pending, can proceed with the case, in the absence of the original letter, and allow parol testimony to be given as to its contents, is a question which is not now before us and which we do not decide. The alternative writ heretofore issued is quashed and a permanent writ denied."

It must be noted that the opinion is predicated solely on the theory that it is against public policy to permit publicity to be made of the complaints and information furnished this board by the citizens of St. Louis. The case of Finley v. Steele, 159 Mo. 299, discusses no such question. It does discuss the question of what is a qualified privilege in the law of libel, and how the ban of the qualified privilege may be raised. The discussion is along the very line of the rule announced in 17 R. C. L., p. 341, supra. The court was discussing the law of libel and not the law of evidence. It had before it a libel case which had been fully tried upon plaintiff's side, and a nonsuit forced by the trial court.

In the instant case the Court of Appeals did not have before it a libel suit, nor the law of libel. Privilege or qualified privilege in libel law was not before it, nor discussed by it. The sole question it disposed of was the character of complaints before this board under the law of evidence.

It held that public policy demanded that complaints to this general-welfare board should not be made public. Without such ruling conflicts with our rulings it must stand.

We are cited to no case from this court covering the ground work of the Court of Appeals opinion. Certain it is that there is no conflict between their opinion and Finley v. Steele, supra, or any of the cases following that case. The subject-matters discussed are wholly different. In such case, we are forced to quash our writ, as having been improvidently issued.

Our writ is therefore quashed, to the end that the record of the Court of Appeals may stand.

All concur, *Bond, C. J.,* in the result.