THE STATE ex rel. LOUIS T. TUNE et al., Constituting the Board of Complaint of the City of St. Louis, and EDWARD G. MARSH, Secretary of said Board, v. VICTOR H. FALKENHAINER and KARL KIMMEL, Judges of the Circuit Court of the City of St. Louis.

In Banc, May 24, 1921.

1. **LIBEL: Communication to Public Officers: Qualified Privilege: Actual Malice.** The Complaint Board established by the St. Louis Charter to receive "complaints against any department, board, division, officer or employee of the city or against any public

utility corporation and examine the same" and "recommend to the proper city or state authorities any action deemed advisable," is a body of public officers to which any citizen, acting in good faith and without actual malice, has the right to make complaints of the kind mentioned, and such complaints, when so made, are privileged.

2. ———: ———: ———: ———: Mandamus: Res Adjudicata. Two citizens of St. Louis wrote a letter to the Complaint Board of that city making charges against an employee of the city. This employee brought a libel suit aganst them based on such letter, but not alleging in his petition that it had been written with actual malice. In aid of his suit he brought a mandamus suit in the St. Louis Court of Appeals against the Complaint Board and its Secretary, relators herein, to obtain a copy of such letter for use in said libel suit. The Court of Appeals refused a peremptory writ and the Supreme Court, on *certiorari* to review its decision, held that it did not conflict with any controlling decision and quashed the writ of *certiorari*. The defendants in the libel suit were not parties to the mandamus suit. After the decision of the Supreme Court in the *certiorari* proceeding the plaintiff in the libel suit filed an amended petition alleging that the letter was written falsely and maliciously by defendants, to which petition they answered by general denial. *Held*, that the judgment of the Court of Appeals was not *res adjudicata* on the right of plaintiff in the libel suit to a subpoena *duces tecum* directed to the secretary of the Complaint Board to produce said letter in the circuit court on the trial of said libel suit. [GRAVES, J., WALKER. C. J., and WOODSON, J., dissenting.]

3. ———: ———: ———: Subpoena duces tecum. Where a libel suit is brought in the circuit court based upon a letter alleged to have been falsely and maliciously written by defendants to a public officer in regard to the plaintiff such court has the inherent power to issue a subpoena *duces tecum* to such officer to produce such letter in such court upon the trial of such suit, and the question of privilege or no privilege with respect to such letter is, in the first instance, one solely for the trial court, to be determined by such court when such letter is offered in evidence.

4. ———: ———: ———: ———: Prohibition. The Supreme Court will not issue a writ of prohibition to the circuit court to prevent the court from enforcing a subpoena *duces tecum* issued by it to compel relator to produce on the trial of a libel suit a letter qualifiedly privileged, where the petition in the suit based on such letter and the application for such subpoena charge that such letter was false and was written maliciously.

5. ———: ———: ———: ———: ———: Appeal. The admissibility in evidence of such letter is to be determined by the trial court and its action thereon may be reviewed on appeal.

Prohibition.

PRELIMINARY RULE DISCHARGED.

*Everett Paul Griffin* for petitioners; *Charles H. Dawes* of counsel.

(1)   The judges of the circuit court exceeded their jurisdiction in issuing a subpoena *duces tecum* requiring the production in evidence of the letter written to the Complaint Board in a trial of a libel suit pending in the circuit court and in threatening to enforce that part of the subpoena *duces tecum* requiring the production in evidence of said letter after the St. Louis Court of Appeals had held that said letter was a privileged communication under the law of evidence. State ex rel. Douglas v. Tune, 199 Mo. App. 404.   (2)   It was the duty of the judges of the circuit court to follow the law as laid down by the St. Louis Court of Appeals. The opinion of the St. Louis Court of Appeals held that this identical letter now sought to be produced in evidence by subpoena *duces tecum* was a highly confidential communication and was a record to which public policy would forbid the confidence to be violated and was a privileged communication under the law of evidence.   Mangold v. Bacon, 237 Mo. 512; State ex rel. Douglas v. Tune, 199 Mo. App. 400.   (a)   This decision of the Court of Appeals was held to be not in conflict with any prior decision of the Supreme Court and, therefore, is today the law of the case and should be followed by the circuit court.   State ex rel. Douglas v. Reynolds, 209 S. W. 100.   (3)   We cite here for convenient reference the various decisions of the appellate courts with reference to the production of this letter. State ex rel. Douglas v. Tune, 191 S. W. 1078; State ex rel. Douglas v. Tune, 200 S. W. 1062; State ex rel.

Douglas v. Tune, 199 Mo. App. 404; State ex rel. Douglas v. Reynolds, 209 S. W. 100.

*Douglas W. Robert* and *Charles Claflin Allen* for respondents.

(1) The rights of the relators and the duty of the respondents, as judges below, are now for the first time presented in a libel suit, with an issue on malice. Compare the pleadings in this case with those in State ex rel. Douglas v. Tune, 199 Mo. App. 404, and State ex rel. Douglas v. Reynolds, 276 Mo. 688. (2) This is a libel suit praying damages for $50,000, based on the letter called for in the subpoena *duces tecum.* Malice is alleged in the petition. Neither the law of libel nor the question of malice was ever before the St. Louis Court of Appeals. The presence here of the averment of malice in a libel suit brings the case directly in line with the rule of law laid down in State ex rel. Douglas v. Reynolds, 276 Mo. 688; 17. R. C. L. p. 341. (a) The law of libel is now involved. (3) In the case at bar there is no privilege, qualified or otherwise. Therefore, no writ of prohibition lies at the instance of the Complaint Board. Finley v. Steele, 159 Mo. 304, 305; Peak v. Taubman, 251 Mo. 418, 435; Holmes v. Royal Union, 222 Mo. 556; Minter v. Bradstreet, 174 Mo. 487; Wagner v. Scott, 164 Mo. 301; Smith v. Fidelity Co., 190 Mo. App. 457; Overton v. White, 117 Mo. App. 604; Yager v. Bruce, 116 Mo. App. 483. (4) The Complaint Board of the City of St. Louis is not within the class of public bodies protected by absolute privilege. Finley v. Steele, 159 Mo. 304. (5) The Complaint Board is not entitled to any sort of privilege, even qualified privilege, as against the rights of citizens injured by the exercise of such a privilege, and especially when the privilege is unnecessarily invoked to bar recovery for a malicious libel. It is not granted in the charter any

powers or privileges of secrecy or sanctity; it is not a public body known to the common law, acting according to the course of the common law, and having any presumptions of jurisdiction, authority or power in its favor; it is merely a body provided in the St. Louis charter for convenience and expediency in the administration of the official affairs of the municipality; it is, under the charter section creating it, a body of the most limited and indefinite authority.

HIGBEE, J.—This is an original proceeding for a writ of prohibition to prohibit the respondents, judges of the Circuit Court of the City of St. Louis, from enforcing a subpoena *duces tecum* requiring Marsh to produce a letter addressed to the Complaint Board on the ground of privilege.

The Charter of the City of St. Louis provides that the Compaint Board shall receive "complaints against any department, board, division, officer, or employee of the city, or against any public utility corporation, and examine the same. It shall recommend to the proper city or State authorities any action deemed advisable." The relators are the members and secretary of this board. The petition alleges that Samuel J. Douglas is an employee of the City of St. Louis in the department of streets and sewers; that Douglas brought an action in the circuit court against Lawrence McDaniel and George S. Thomas for libel, based on a letter written by them November 29, 1916, making certain false charges against him in this, that he uses vile and obscene language to women and children who pass him; that he curses and swears at children, etc., his damage in the the sum of $50,000: that Douglas brought an action of mandamus against relators in the St. Louis Court of Appeals to obtain a copy of said letter for his use in the preparation and as evidence in the trial of said action, which is still pending in the said circuit court; that the Court of Ap-

peals held that said letter was privileged and that the court could not compel its production as evidence upon the trial of said cause; that thereafter said Douglas sued out a writ of *certiorari* in the Supreme Court, alleging that the decision of the Court of Appeals was in conflict with decisions of the Supreme Court and that the Supreme Court held that said decision was not in conflict with any of its prior decisions and quashed the writ of *certiorari*.

That on March 29, 1920, the Hon. Victor H. Falkenhainer, judge of said circuit court, presiding in Division One of said court, on the application of said Douglas issued a subpoena *duces tecum* directed to relator Marsh, secretary of said Complaint Board, to produce said letter at the trial of said cause; that on May 20, 1920, relators filed a motion to quash said subpoena, citing said decision of the Court of Appeals holding said letter to be a privileged communication, but said Judge overruled said motion; that said Marsh is ready and willing to appear in said court in response to said subpoena but is unwilling to produce said letter because the Court of Appeals held it to be a privileged communication: that the Hon. Karl Kimmel is now presiding judge in Division One of said circuit court; that Judge Falkenhainer is now presiding judge in Division Thirteen of said court, and that Judge Kimmel threatens to enforce said subpoena and compel the production of said letter on the trial of said cause, all of which is contrary to the decision of said Court of Appeals.

The respondents' return to the preliminary rule sets out the amended petition filed in the Douglas libel action and the subpoena *duces tecum,* and avers that in the proceedings in the Court of Appeals (State ex rel. Douglas v. Tune, 199 Mo. App. 404, 203 S. W. 465), and in this court (State ex rel. Douglas v. Reynolds, 276 Mo. 688, 209 S. W. 100), no showing was made that the libel was predicated upon a letter that was maliciously written, as was averred in the amended petition in the libel suit, and that said court properly overruled the

motion to quash said subpoena: that thereafter Judge Falkenhainer was transferred to Division Thirteen of said court and Judge Kimmel was assigned to Division One thereof; that the acts done by respondents and each of them respectively were done and intended to be done in discharge of their official duties and that said subpoena was issued for the reason that the suit was an action for libel on a petition which averred that the letter mentioned in said subpoena was written falsely and maliciously by defendants, and an issue has been joined on a general denial filed by said defendants; that said action has been continued from time to time on account of the pendency of this proceeding. Wherefore they pray, etc.

Relators challenge the sufficiency of the return and move for the issuance of a peremptory writ of prohibition.

The foregoing statement, it is believed, is sufficient for the consideration of the questions arising in this cause. The facts are fully recited in the opinion of JUDGE GRAVES in State ex rel. Douglas v. Reynolds, 276 Mo. 688.

I. Relators charge that the circuit court exceeded its jurisdiction in issuing the subpoena to respondent Marsh to produce in court the letter on which the action was predicated, because it was held to be privileged by the Court of Appeals. The opinion of JUDGE GRAVES notes the absence of an averment in the petition for the writ of mandamus of an allegation that the letter was maliciously written. In other words, as far as the petition before us for review is concerned, we must presume, under the law, that the letter was sent in good faith and without malice (p. 694). On page 695, Judge GRAVES, speaking for Court in Banc, said:

Libel: Public Officers: Privileged Communication: Actual Malice.

"The petition for mandamus shows the board to which it was addressed was at least a governmental

agency provided for the good of the city government. Complaints made to such a body, at the very least, must be held to be qualifiedly privileged, and the qualified privilege cannot be destroyed without a charge of malice. To destroy the patent qualified privilege of this letter, absence of good faith, and presence of malice, should have been charged. No such charge is made and upon this theory alone the Court of Appeals reached a right result in refusing the writ.'' There can be no doubt that the letter in question is qualifiedly privileged.

Finley v. Steele, 159 Mo. 299, was an action for libel based on a letter written by the members of a school board to the county superintendent, making accusations against Miss Finley, the teacher of the school, and asking him to revoke her certificate. Judge BURGESS reviewed many cases. At the foot of page 305, the learned judge said:

''It is announced in Marks v. Baker, 28 Minn. 162, that 'the rule is that a communication made in good faith, upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty, public or private, either legal, moral or social, if made to a person having a corresponding interest or duty, is privileged; that in such case the inference of malice. . . . is cast upon the person claiming to be defamed.'

'' 'Malice in such case is not shown by the mere fact of the falsity of the publication.' [Henry v. Moberly, 6 Ind. App. 490; Stewart v. Hall, 83 Ky. 375.]''

Again, on page 307, it was said:

''They not only had an interest in regard to the way in which the school was being conducted, but in preferring the charges against the plaintiff were simply discharging their duties as members of the school board, and it makes no difference that the exact words of the statute were not used, or that some word not embraced therein was used, the purpose and intent was the same. There was no actual malice proven, and the use of such word or words did not take away the priv-

ileged character of the communication. Intent makes the libel in such circumstances.

"The communication was made on a proper occasion, from a proper motive, and was based upon a reasonable cause. It was made in apparent good faith, and under these circumstances the law does not imply malice— and as there was no proof of express malice the plaintiff was not entitled to recover. The judgment is affirmed."

The ruling in Finley v. Steele has been frequently approved. [See Peak v. Taubman, 251 Mo. 390, 418, 434 et seq.]

The rule permitting criticism of public officers is the same as that which governs the criticism of all matters of public interest, such as public institutions, places of entertainment, books, pictures and other matters, and under it it is permissible to criticize fairly and without malice or view to injure or prejudice in the eyes of the public. [McClung v. Star Chronicle Pub. Co., 274 Mo. 194, 202 S. W. 571.] But the qualified privilege to criticize public acts of public officials does not exist where defendant was actuated by malice. [McClung v. Pulitzer Pub. Co., 214 S. W. 193. See, also, Diener v. Publishing Co., 230 Mo. 613; S. C. 232 Mo. 416; Ex parte Harrison, 212 Mo. 88, l. c. 92; Cornelius v. Cornelius, 233 Mo. 1, l. c. 30; Tilles v. Publishing Co., 241 Mo. 609 (syl. 6); Link v. Hamlin, 270 Mo. 319, l. c. 336; Yancey v. Kentucky, 122 S. W. 123, 25 L. R. A. (N. S.) 455, and annotations.]

McKee v. Hughes, 181 S. W. 930, L. R. A. 1916D, 391, was an action for libel on a petition to revoke the license of a merchant. In that case it was argued that the petition was not privileged because the council had no authority to revoke the license. The court, at page 393, said:

"Can it be that ordinary laymen in the exercise of such a right may be thus caught on such a fine point of law, to their undoing as is insisted in this case? The juster view is that these men but advance the above

mode of action as a suggestion for the consideration of the members of the council deemed by them competent to judge and act as public officials, and that they are not liable if they acted in good faith or without malice. The right of petition guaranteed to the citizen in the Bill of Rights should not be allowed to become a trap for the petitioner, to be sprung by any such hairtrigger of technical law." [See 25 Cyc. 385, C.]

.However, in some jurisdictions, communications of the character of this letter are held to be within the protection of the Bill of Rights. Thus an application to the Governor for a pardon, charging that the district judge "changed the venue of the case for the purpose of making the costs excessive," alleged "to be untrue and written and published with actual malice without any foundation whatever," was held to be absolutely privileged. [Connellee v. Blanton, 163 S. W. 404.]

II. The Complaint Board is a governmental agency created for the express purpose of investigating complaints against any department, board, officer or employee of the city. It therefore had an interest and a duty to perform in connection with complaints of this character. The complainants were interested, as citizens of St. Louis, in having the matters complained of investigated, and are therefore privileged in making complaints, if made in good faith and without malice. [State ex rel. v. Reynolds, 276 Mo. 1. c. 695; 25 Cyc. 389.]

Privilege.

III. It is urged, however, that the decision of the Court of Appeals is *res adjudicata* because this court held it was not in conflict with any of its prior decisions. On this point Judge GRAVES, on page 701 of State ex rel. Douglas v. Reynolds, supra, said: "In the instant case the Court of Appeals did not have before it a libel suit, nor the law of libel. Privilege or qualified privilege in libel law was not before it, nor discussed by it. . . . It held that public policy demanded that complaints to this general-

Res Adjudicata.

welfare board should not be made public. . . . Certain it is that there is no conflict between their opinion and Finley v. Steele, supra, or any of the cases following that case. The subject-matters discussed are wholly different.''

The relator, Douglas, prayed for an order to permit him to inspect or make a copy of the letter, basing his claim on the ground that it was a public document, which the court denied (p. 698). It was not claimed that McDaniel and Thomas had any connection with that case. It was *res inter alios acta.* [Henry v. Woods, 77 Mo. 277, 1. c. 281; Strottman v. Railroad, 228 Mo. 154, 1. c. 182; 23 Cyc. 1237.]

IV. But a fundamental reason why the rule should be discharged is that the circuit court had inherent power to issue the subpoena (40 Cyc. 2167), and the question of privilege or no privilege is, in the first instance, one solely for the trial court. Subpoena Duces Tecum. Issue is joined between the litigants on the question of defendants' malice in writing the letter. It must be obvious that it is a question of fact of which this court cannot take cognizance in a proceeding of this character.

While the federal grand jury was investigating the charge of treason against Aaron Burr, he applied to the court for a subpoena *duces tecum* to the President to produce a certain letter addressed to him by General Wilkinson, together with documents accompanying the said letter, also the military or naval orders given by the President at or near the New Orleans station concerning the said Burr. Chief Justice MARSHALL heard arguments touching the authority of the court to subpoena the President, or to require him to produce state papers. There was no precedent. It was admitted that such a writ would not run against the King of England, and it was argued by the District Attorney that the court had no power to subpoena the chief magistrate or to order the production of state papers to be read in evidence; that

the documents called for might contain matter which should not be disclosed.

The Chief Justice could perceive no foundation for the opinion that the issuance of the subpoena would be discourteous to the President. He held that the law does not discriminate between the President and a private citizen and that the propriety of introducing any paper into a case depends on the character of the paper, not on the character of the person holding it. A subpoena *duces tecum,* then, may issue to any person to whom an ordinary subpoena may issue, directing him to bring any paper of which the party praying it has a right to avail himself as testimony. The Chief Justice, continuing, said:

"When this subject was suddenly introduced, the court felt some doubt concerning the propriety of directing a subpoena to the chief magistrate, and some doubt, also, concerning the propriety of directing any paper in his possession, not public in its nature, to be exhibited in court. The impression, that the questions which might arise in consequence of such process, were more proper for discussion on the return of the process than on its issuing, was then strong on the minds of the judges.

"The court can perceive no legal objection to issuing a subpoena *duces tecum* to any person whatever, provided the case be such as to justify the process. The court would not lend its aid to motions obviously designed to manifest disrespect to the government, but the court has no right to refuse its aid to motions for papers to which the accused may be entitled and which may be material in his defense.

These observations are made to show the nature of the discretion which may be exercised. If it be apparent that the papers are irrelative to the case, or that, for stated reasons they cannot be introduced into the defense, the subpoena *duces tecum* would be useless. But, if this be not apparent, if they may be important in the de-

fense, if they may be safely read at the trial, would it not be a blot on the page which records the judicial proceedings of this country, if, in a case of such serious import as this, the accused should be denied the use of them?

". . . The second objection is that the letter contains matter which ought not to be disclosed. At present it need only be said that the question does not occur at this time. . . . If it does contain any matter which it may be imprudent to disclose, which it is not the wish of the Executive to disclose, such matter, if it be not immediately and essentially applicable to the case, will, of course, be suppressed. . . . Everything of this kind, however, will have its due consideration on the return of the subpoena." [1 Burr's Trial, 182-187].

It is sufficient to add that the subpoena was served and the documents called for were forwarded by Mr. Jefferson to the District Attorney. Justice MARSHALL reserved the right to pass upon their admissibility at the trial. The precedent, thus established, has ever since been followed.

The rule is stated in 40 Cyc. 2169:

"It is the duty of a witness served with a subpoena *duces tecum* to appear and produce the book or paper mentioned in the writ, if it is in his possession. The fact that a subpoena requires a witness to produce books and papers which he cannot lawfully be required to produce does not affect the legality of the issuance of the subpoena or the obligation of the witness to appear in obedience to it, and if he has doubts as to whether or not he should produce the document called for, he may submit it to the inspection of the court, which may decide on the question of its production. . . . . . . But it has also been held that a witness is not bound to produce a paper, in compliance with a subpoena *duces tecum* until he has been sworn as a witness to enable him to state on oath his reasons why he should not be compelled to produce it."

In Hull v. Lyon, 27 Mo. 570, it was held, Scott, J., delivering the opinion of the court, that "whether a communication is a privileged one is a question for the court."

In Peak v. Taubman, 251 Mo. 391, in an opinion by by Woodson, P. J., l. c. 434, the court said: "It is for the court and not for the jury to say when words are of a privileged character."

In Hamil & Co. v. England, 50 Mo. App. 338, it was held that an attorney who advised about and drew up a fraudulent bill of sale could be compelled to testify as to what was said to him by his client and that the trial court erred in holding that such communication was privileged. If the advice had been in a letter written by the attorney to his client, would this court have prohibited the enforcement of a subpoena *duces tecum* for its production in evidence?

In 1 Thompson on Trials, section 730, the learned author says a subpoena *duces tecum* is defined to be, "a process by which a court, at the instance of a suitor, commands a person, who has in his possession or control some document or paper that is pertinent to the issues of the pending controversy, to produce it for use at the trial." In Section 175 it is said: "the papers are required to be stated or specified only with that degree of certainty which is practicable, considering all the circumstances of the case, so that the witness may know what is wanted of him, and may have the papers at the trial so that they can be used, if the court shall then determine them to be competent and relevant evidence." Section 300 reads as follows: "Whenever, in the practical application of these rules, the question of privilege arose, it was not . . . the right of the witness to judge except where the matter might incriminate him, whether the matter inquired of was privileged or not. That was the province of the court. If the production of a document was called for, and the witness declined to produce it, upon the ground that the reading of it in evidence would be prejudicial to his interests, or to the

288 Mo.—3

interests of the party for whom the witness acted as attorney, the witness was required to submit the document to the inspection of the court, and if the judge, after perusing it, differed from the witness, he would direct it to be read; or if a witness swore that a question put to him could not be answered without a disclosure of secrets communicated to him by his client, it was for the court to determine, from the nature of the inquiry, whether the principle of protection extended to it or not; and if the court decided that it did not, the witness, should he refuse to answer, would be guilty of a contempt, nor would the court even hear counsel upon the plea of the witness' objection.''

In State ex inf. v. Standard Oil Co., 218 Mo. 1, it was said: ''Nor does the Constitution interfere with the power of the court to compel the production of documentary evidence under a subpoena *duces tecum.*'' [Syl. 11].

''The rule seems to be well settled that, although the determination of a question of fact is thereby involved it is for the court to determine the admissibility, materiality, relevancy or competency of evidence, or the competency of witnesses; and it is error for the judge to submit to the jury the competency of evidence, or to instruct them that they may exclude such testimony as they see is improper.'' [38 Cyc. 1513].

V. It is solemnly asserted by the relators that the trial court exceeded its jurisdiction in issuing the subpoena *duces tecum* to require Marsh to produce the letter in question held to be privileged by the Court of Appeals, which, as we have seen, was in an action involving other issues and between other par-

Prohibition. ties. It was held by this court, in the opinion by Judge GRAVES, that the letter is qualifiedly privileged, but if it be shown to have been written maliciously its qualified privilege is lost. It was held by Chief Justice MARSHALL that the writ will issue for the production of State papers and that the question of privilege is to be determined when

they are offered in evidence. It is charged in the amended petition in the circuit court and in the application for the subpoena *duces tecum* that the letter was false and malicious. It is apparent that its production is essential in the trial of the action. Its admissibility in evidence is a question for the trial court. It would be a manifest usurpation and invasion of the jurisdiction of the trial court were we to assume to rule on the issue presented by the pleadings in this case.

The preliminary rule was improvidently granted and is quashed. The writ is denied. *Elder* and *D. E. Blair, JJ.,* concur; *J. T. Blair, J.,* concurs in separate opinion; *Graves, J.,* dissents in separate opinion in which *Walker, C. J.,* and *Woodson, J.,* concur.

JAMES T. BLAIR, J. (concurring).—I concur in the principle announced in Paragraph IV of the opinion and concur in the result. The objections (1) that the letter is absolutely privileged, and (2) that the question of privilege is *res adjudicata* may be presented to the trial court for what they are worth. The witness should not be permitted to decide a question of availability of evidence. Prohibition will not lie merely to prevent a trial court from making ruling on evidence, erroneous, or otherwise. Neither, it seems to me, is there present any circumstance of the character usually held sufficient to render the remedy by appeal inadequate. Further, the inadequacy of appeal as a remedy is of no great consequence in view of the presence of jurisdiction in the trial court to rule on the question of evidence when it is presented to it.

GRAVES, J. (dissenting).—Samuel J. Douglas, has now, and for a long time has had, pending in the Circuit Court of the City of St. Louis, a libel suit against Lawrence McDaniel and George E. Thompson. This suit has for its basis a letter written by these two gentle-

men to the Complaint Board of the City of St. Louis. From the filing of the libel petition, Douglas has made a persistent fight to secure this letter for use in the trial of his libel suit. See his divers efforts in the following cases in the court of Appeals, and in this court: State ex rel. Douglas v. Tune et al., 191 S. W. 1078; State ex rel. Douglas v. Tune et al., 200 S. W. 1062; State ex rel. Douglas v. Tune et al., 199 Mo. App. 404; State ex rel. Douglas v. Reynolds et al., Judges, 209 S. W. 100, 276 Mo. 688.

The situation as to all these cases, except the last named above is fairly stated in State ex rel. v. Tune et al., 199 Mo. App. l.·c. 410. In the instant case we are only concerned with the case in 199 Mo. App., supra, and our own case in 276 Mo., supra.

The present case is in prohibition, wherein the Complaint Board of St. Louis, is seeking to prohibit the circuit court from enforcing a writ of subpoena *duces tecum,* issued by the circuit court (now having for disposition the aforesaid libel suit) requiring this Complaint Board and its secretary to produce this letter for use in the trial of the cause.

Douglas had made a previous attempt to get this letter or a copy thereof for use in the libel suit. This time was by mandamus against the Complaint Board and its secretary. [See 199 Mo. App. 404, supra.] In that case the St. Louis Court of Appeals in closing its opinion (199 Mo. App. l. c. 415) said:

"Our conclusion is that the respondents here were justified in their refusal to permit relator to have an inspection of the letter, assuming such letter was in their control, and in refusing to allow the relator to make a copy of it. That is as far as we go in this case, except to say that neither our court nor the circuit court in which the action for libel is pending, can compel the production of the letter for the purposes sought by relator. Whether the circuit court, in which the action for libel is pending, can proceed with the case, in the absence of the

original letter and allow parole testimony to be given as to its contents, is a question which is not now before us and which we do not decide."

This opinion was brought before us by *certiorari* in State ex rel. Douglas v. Reynolds et al., 276 Mo. 688, and we declined to quash it. It stands as the law upon the questions therein ajudicated.

The petitioners' (relators) for our writ of prohibition plead the final adjudication of Douglas's right to the use of this letter in his libel suit in their petition herein, and say that notwithstanding such final adjudication of the question, the circuit court is calling for the letter for such use by its subpoena *duces tecum,* issued upon the application of Douglas, which subpoena the court has refused to quash, notwithstanding the adjudication in the St. Louis Court of Appeals.

The respondents (Circuit Judges) appear here through the counsel for Douglas, and in their return urge that the present action is between different parties, is different in the form of action, and is different in subject-matter. However, by exhibits and allegations in the petition (not denied in the return) the matter as to whether or not there has been an adjudication of the same question in the former action is in the record before us. This outlines the situation.

I. It is urged by learned counsel for the respondents, that the petition for the subpoena *duces tecum* was granted because of what we said in 276 Mo. 688, supra. They urge that we ruled that the letter was only qualifiedly privileged and not absolutely privileged.

In the case of State ex rel. Douglas v. Reynolds, 276 Mo. 688, we did not rule that the letter was qualifiedly privileged and not absolutely privileged. The Court of Appeals had ruled that it was against public policy to permit communications of this character to be made public, and we did not quash their judgment, because we had never ruled upon a similiar state of

facts, and there was no conflict of opinion. What we did say was that the letter, under the facts, was "at least qualifiedly privileged" and in the absence of a charge of malice, the Court of Appeals could have justified its judgment upon that ground. It had not done so however.

We did not rule that the letter was only qualifiedly privileged. We were not trying to determine the question of qualified privilege or absolute privilege, but we did rule that even if the letter was qualifiedly privileged, the defect in the pleadings were not such as would permit its use—absent in the pleadings the charge of malice. We went further and said that the whole discussion was beside the real issue. So that if this opinion was the occasion for the issuance of the subpoena *duces tecum,* there was no justification for the issuance of it.

II. If there had been a prior ajudication of the rights of Douglas to use this letter in the trial of his libel suit, and that adjudication against him, then will prohibition lie? We have ruled that prohibition will lie where an appeal would not be an adequate remedy. To refuse prohibition, it must appear that the party has another remedy, by appeal or otherwise which is adequate, prompt, and efficient. [State ex rel. Knisely v. Jones, 202 S. W. l. c. 1122.]

In this case the parties would have to go through the trial of a libel suit, and be subject to all the expenses and inconveniences thereof, when, if the trial court adheres to its expressed views, they would have to appeal to this court, to have the question of *res adjudicata* determined. In such case the appeal would not be an adequate, efficient and prompt remedy. Relators have been in court four times at the instance of Douglas upon the right of Douglas to use this letter in the trial of his libel suit. Now he insists that they come for a fifth time by the cumbersome route of appeal. It is time

that the question be settled, but an appeal is wholly in-adequate as the remedy, in view of the indisputed facts before us. So we hold, that if in fact the plea of former adjudication is good, the writ should go.

III. The question ruled by the St. Louis Court of Appeals was that Douglas could not compel the produc-tion of this letter for the use he desired, i. e. for use in the trial of his libel suit. [199 Mo. App. l. c. 415.] This was the mandamus case in the St. Louis Court of Appeals. Douglas was the relator in that case, and the Complaint Board and its secretary were the respon-dents. Hon. Douglas W. Robert represented Douglas in that case, as he does the respondents, for Douglas, in this case. In this case the relators are the Complaint Board and its secretary, and the nominal respondents, two Circuit Judges of St. Louis, but the real respondent, and the one interested in upholding the Circuit Judge, is none other than Douglas, through his counsel. Doug-las does not have to be an actual party to the suit, if in fact, as here he is defending the action by his own coun-sel.

It would be to throw aside all of our experiences to say that Douglas is not the real respondent in the pres-ent action. We know by whom all such cases are de-fended even if the counsel for Douglas were not actually (as here) defending the action. The whole brief for respondents here shows that counsel are here for Doug-las. So that we rule that there is identity of parties in the two cases. In other words, whatever our judgment here, it would bind Douglas. [Titus v. North K. C. De-velopment Co., 264 Mo. 229; 15 R. C. L. l. c. 1010.] In the latter it is said:

"The courts look beyond the nominal parties, and treat all those whose interests are involved in the liti-gation and who conduct and control the action or de-fense as real parties, and hold them concluded by any judgment which may be rendered, as for example

those who employ counsel in the case, assume the active management of the proceeding or defense, or who pay the costs and do such other things as are generally done by parties. In other words, by participating in the proceedings one is estopped by the judgment as to any questions actually litigated and decided therein. One who instigates another to do a wrongful act, and, when the wrongdoer is sued, takes upon himself and conducts the defense of the case, is estopped from again litigating with the plaintiff in that action the issues there decided. Similarly, where a suit is prosecuted or defended by one person at the instance of another, and for the latter's benefit, the judgment will be binding and conclusive upon the latter. In all such cases the strict rule that a judgment operates as *res judicata* only in regard to parties and privies expands to include such persons as parties, or at least as privies."

So too there is the same subject-matter, i. e., the use of this letter by Douglas in the trial of his libel suit. And this in the face of the fact, that the question of such use has been fully and finally determined against him (in the mandamus suit) by the St. Louis Court of Appeals.

There can be *res adjudicata* as to certain questions in a case, without involving the whole case. Such is the situation here. The right of Douglas to use this letter is a matter finally determined, and as this matter appears upon the face of the record before us, our writ should go. Under the facts an appeal would be wholly inadequate. For these reasons I dissent. *Walker, C. J., and Woodson, J.,* concur in these views.